

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

## ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Randoll, Shawn
Name

437024
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?    Yes or ⟨No⟩

    If this is a habeas case, please circle the related statute.    28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?    ⟨Yes⟩ or No

    If yes, please list case number:    25-CV-1130-RJD

    If yes, but you do not know the case number mark here:

3.  Should this document be filed in a pending case?    ⟨Yes⟩ or No

    If yes, please list case number:    25-CV-1130-RJD

    If yes, but you do not know the case number mark here:

4.  Please list the total number of pages being transmitted:    73

5.  If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
| --- | --- |
| Amended Civil Rights Complaint | 73 |
| | |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.

Amended

# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

SCANNED at MENARD and E-mailed
8/10/25 by _____ 73 pages
Date          Initials     No.

SHawn Randall  Y37024

)
)
)
)
)
)

*Plaintiff(s)/Petitioner(s)*

v.

C/o R. Gearhart, Lt. Dallas, SGT. wooley, Jacob Guetersloh, Kevin Reichert, walker, Sandy L., Anothony W.lls, Anothony B. Jones, Angela Locke, ETC...

*Defendant(s)/Respondent(s)*

)
)
)
)
)
)
)
)

Case Number: 25-cv-1130-RJD

*(Clerk's Office will provide)*

■ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)
☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)
☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act, 28 U.S.C.
§§1346, 2671-2680, or other law

## I.    JURISDICTION

**Plaintiff:** SHAWN  RANDALL  ID# Y37024

A.    Plaintiff's mailing address, register number, and present place of confinement.  P.O. BOX 1,000

Menard IL, 62259

### Defendant #1:

B.    Defendant Robert W. Gearhart _____ is employed as
          (a)    (Name of First Defendant)

officer / Internal Affairs _____
          (b)    (Position/Title)

with Illinois Department of corrections _____
          (c)    (Employer's Name and Address)

711 Kaskaskia St. Menard IL, 62259

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain:

Rev. 10/3/19

**Defendant #2:**

C. Defendant ___Dallas_____ is employed as

(Name of Second Defendant)

___Lieutenant / Internal Affairs_____

(Position/Title)

with ___Illinois Department of Corrections_____

(Employer's Name and Address)

___711 Kaskaskia St. Menard IL, 62259_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain: He Employed by I.D.O.C.

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3 Woodley                          YES ☒ Employed by I.D.O.C.
    Sergeant / Internal Affairs
    Illinois Dept of Corrections
    711 Kaskaskia St
    Menard IL, 62259

Defendant #4 Jacob Guetersloh                YES ☒ Employed by I.D.O.C.
    Correctional counselor
    Illinois Dept of Corrections
    711 Kaskaskia St
    Menard IL, 62259

Rev. 10/3/19

Defendant #5 Kevin Reicheet                yes ☑ Employed by I.D.O.C.
Chief Administrative Officer
Illinois Dept of Corrections
711 Kaskaskia St
Menard IL, 62259

Defendant #6 Sandy Walker                  yes ☑ Employed by I.D.O.C.
Lietenant/Adjustment Committee officer
Illinois Dept of Corrections
711 Kaskaskia St
Menard IL, 62259

Defendant #7 Anthony Wills                 yes ☑ Employed by I.D.O.C.
Warden
Illinois Dept of Corrections
711 Kaskaskia St
Menard IL 62259

Defendant #8 Anthony Jones                 Yes ☑ Employed by I.D.O.C.
Sergeant
Illinois Dept of Corrections
711 Kaskaskia St
Menard IL, 62259

Defendant #9 Angela Locke                  Yes ☑ Employed by I.D.o C.
Deputy Director
Illinois Dept of Correction
711 Kaskaskia St.

menard IL, 62259

Defendant #10 Chandler                yes ☑ Employed by I.D.O.C
   correctional officer c/o
Illinois Dept of corrections
711 Kaskaskia st
Menard IL, 62259

Defendant #11 Heins                 Yes ☑ Employed by I.D.O.C.
   correctional officer c/o
Illinois Dept of corrections
711 Kaskaskia ST
Menard IL, 62259

Defendant #12 Baker                yes ☑ Employed by I.D.O.C.
correctional officer c/o
Illinois Dept of Corrections
711 Kaskaskia st
Menard IL, 62259

Defendant #13 Choate               yes ☑ Employed by I.D.O.C.
   correctional officer c/o
Illinois Dept of corrections
711 Kaskaskia st
Menard IL, 62259

Defendant # 14  Farrar          Yes ☑ Employed by I.D.O.C.
Correctional office
Illinois Dept of Corrections
711 Kashaskia ST
Menard IL, 62259

Defendant #15  Bent             yes ☑ Employed by I.D.O.C.
coRRectional officeR
Illinois Dept of Corrections
711 kashaskia st
Menard IL, 62259

Defendant #16  Ms. Salge        Yes ☑ Employed by I.D.O.C.
MENtal HeAlth
Illinois Dept of Corrections
711 KasKaskia st
MenARD IL, 62259

Defendant #17  Ms Phillips      Yes ☑ Employed by I.D.O.C.
MENtal HeAlth
Illinois Dept f Correction
711 KA Kaskia st
MENARD IL, 62259

Defendant #18  Falaster         yes ☑ Employed by I.D.O.C.
correctional officeR
Illinois Dept of corrections

711 Kaskaskia st.
Menard IL, 62259


Defendant #19  McClanahon          yes ☑ Employed by I.D.O.C
correctional officer/ Major
Illinois Dept of corrections
711 Kaskaskia st
Menard IL, 62259

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☑Yes ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s):
Shawn Randall

Defendant(s):
Joshua Schoenbeck, Anthony Jones
Angie Winters

2.   Court (if federal court, name of the district; if state court, name of the county): Southern District of Illinois

3.   Docket number: No 22-2146-MAB

4.   Name of Judge to whom case was assigned:
Mark A. Beatty United States Magistrate Judge

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):   Civil rights action

6.   Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):
Settled in Mediation Session

Rev. 10/3/19

7.   Approximate date of filing lawsuit:
     9/12/2022
8.   Approximate date of disposition:
     9/13/2024

9.   Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"  No

## III.   GRIEVANCE PROCEDURE

A.   Is there a prisoner grievance procedure in the institution? ☑ Yes   ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?                                    ☑ Yes   ☐ No

C.   If your answer is YES,
     1.   What steps did you take?
          I attached the drug lab report. As well I pointed Out facts that my shakedown slip never said synthetic cannabinoids were found.
     2.   What was the result?
          My issues were Ignored!

D.   If your answer is NO, explain why not.

     N/A

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?                        ☐ Yes   ☐ No

F.   If your answer is YES,
     1.   What steps did you take?

Rev. 10/3/19

2.      What was the result?


G.      If your answer is NO, explain why not.


H.      Attach copies of your request for an administrative remedy and any
        response you received.  If you cannot do so, explain why not:

Rev. 10/3/19

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments or citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Rev. 10/3/19

IV.        Statement of Claim

1) Upon information And belief: On August 15, 2024 My Cell was shaken Down By Internal Affairs/IA    Lieutant Dallas And Sergent Wooley. At Which time Plaintiff and cell mate, Where placed in Restrictive housing And both Issued D.R. 504 ticket's for 203 Drug and Drug Paraphernalla

2) upon information And belief: On August 16, 2024 I was serve A D.R. 504 IN which there was no mention of Any paper found in my Cell or on my person. I wasn't informed this Date or Any Date that lead up to me being put on notice that something was found and is being sent out to A Lab.

3) upon information and belief: On August 20, 2024 I was given A hearing By the Adjustment committee. The hearing officer that Ruled on my D.R. 504 was Chair-person Sandy L Walker    co-chair person Anothony B. Jones. I informed the committee that I pled (not guilty) too.

4) upon information and belief: On August 21, 2024 I was released from Restrictive housing ▇ Because The Adjustment committee found Me (NOT Guilty) based on My Cell-Mate Pleding Guilty to All the charges on Our D.R. 504.

5.) upon information and belief: On September 24, 2024 I was Placed Back into Restrictive Housing for A D.R. 504   203 Drug and Drug PARAphernalla. for Which Robert W. Gearhart An Internal Affair's office written A New D.R. 504 for 203 Drug And Drug PARAphernalla

from a incident ▨ that happened not only on August 15, 2024. IN which I had got written up for and found (Not guilty). ▨ Plus My cell-mate Had Plead Guilty to Everything that was found in the ticket.

6.) upon information And belief: On September 25, 2024 I wrote and sent out serveral Request Slip's Explaining That I had Already been written up for 203 on August 15, 2024. And I was found Not Guilty And Let out of Restrictive Housing. I put "All" the Request Slip in the prison mail. I sent one to Sandy L walker, Anothony B. Jones, Anothony Wills, Kevin Reichert, Ms. Woodley And Lieutenant Dallas. ▨ Letting each person Know what's happing That This is Double Jeppardy. (SEE Exhibit # A)

7.) upon information and belief: On October 1st, 2024 I had A hearing with the Adjustment Committee. Sandy L. Walker and Anothony B. Jones were The hearing officee's Again. I informed both Ms. Walker and Mr. Jones I wrote And sent both of them Request Slip's Explaining I had already heard this D.R.504 on August 20, 2024 IN which my cell-mate Plead Guilty for And I shouldn't have be written up in the first Place.

8) I informed Sandy L. walker and Anothony B. Jones That I have my Shakedown Slip And (ND WERE) Is it written that A Phone-Book ▨ And drug's was found. Or That Anything Needed to be Sent out to A Lab. I plead plead Not Guilty to All Charges.

9.) Upon information and belief: On October 1, 2024 I wrote and placed A Grievance in the Grievance book. Concerning Be written up twice for The Same incident which is Double Jeppardy. Also A Due process violation. The D.R.504 is void because it's written on A form that is not suppose To be used Any more. (SEE Exhibit #1)

10.) upon information and belief: On October 2, 2024 I Asked my gallary officer was I getting out of Restrictive housing And was told NO. I'd Been found Guilty of My D.R.504 and was giving 6 month's Segregation

11.) upon information And belief: On October 18, 2024 I wrote A request Slip to Anthony Willis, Mr. McClanahon Requesting to be let out the cell for yard/Recreation time. I Also written A Request Slip to Mental Health Ms. Salgee and Ms. Phillip's Asking for A 1 on 1 ▓▓▓▓ Because I wasn't being Let out My cell for any reason. I was having trouble Mentally and needed help. (SEE Exhibit #B)

12.) Upon information And belief: On November 19, 2024 I wrote An place A grievance in the prison mail box. Concerning The D.R.504 Ticket for 203 Drug And Drug Paraphernalia that was written on 9-24-24 Buy Robert W. Gearhart Internal Affair's officer. I stated and Attached A copy of the Lab Report from the illinois Crime Lab. Stating that Their finding's wasn't Synthetic Cannabinoids. And I Should be Released from Segregation. (SEE Exhibit #2)

13.) Upon information and belief: On December 18, 2024 I wrote Request Slip's to. Anothony Wills, Mrs. McClanahon. Requesting to be let out my cell for Yard and informed them That I had not been let out for (ANY out the cell time Since my last Request Slip Dated October 18, 2024 I Also Sent Request Slip's to Ms. Salger and Ms. Phillips Pleding for Any one to Please call me out for A 1 on 1 or Group cause I needed to see Someone bad. (SEE Exhibit #C)

14.) That I don't feel Safe talking infront of the correctional Officer That walk's with the mental health when They walk the gallary.

15.) Upon information and belief: On January 8, 2025 Anthony Wills Signed off on me being put on mail watch. On January 9, 2025 Angela Lock Signed and confirmed to put me on mail Scan.

16.) Upon information and belief: On January 9, 2025 I was told I was on mail watch & mail scan. I wrote Anothony Wills, Sandy Walker, Anthony B. Jones, And Explained that I haven't violated Any D.R. 504 State or Fed's law's And should'nt be on Mail watch in the first Place. Cause My cell mate Plead Guilty to the charges. I didn't Here anything back. (SEE Exhibit )

17.) Upon information and belief: On January 20, 2025 I wrote And put a grievance in the prison mail. for Staff conduct & mail handling Letting The grievance office know I didn't broke Any Rule's why is my mail being keep from me. for There Respond (SEE Exhibit #3)

18.) upon information And belief: On Feb 25, 2025 I wrote A grievance And put it in the prison mail. Dealing with staff conduct, medical treatme And No Yard. I Explained that I had Asked Every officer that worker My Gallary If I could go to yard, Every Day Since coming to Restrictive housing. Officer Heins, Choate, farrar, Baker, Bent and chandler All Made it out to be A Joke. Every day Monday thur friday when I Asked Any of them About yard. I was told "I" Meaning Them Just work here They don't make the game Plan.

19.) I Even let the grievance office know that I been Asking Mental Health Ms Salger and MS. Phillips During they're weekly Round's And request Slip's for Yard time, 1 on 1 Seccion and Groups. My Grievance was Denied (SEE Exhibit #4)

20.) upon information and belief: On March 2, 2025 I wrote Request Slips And place them in the prison mail box. To Mental Health Ms. Salger and Ms. Phillip's Begging to be seen By Any Mental Health worker I informed Both of them that I request Mental Health from the Gallary officer And was told If I Aint gone kill myself of some- one EAch Then write A Request Slip Cause He not gone call No-body I Never heard anything back. (SEE ~~exhibit~~ Extiibit # D )

21). Upon information And belief: On March 3, 2025 I wrote A grievance Concerning Not Getting Any mail from the mail Room. Which I was informed Internal Affaie's Deal ~~with~~ with All out going and in Coming mail for those People being Placed on Mail watch. Grievance was Denied. (~~SEE Exhibit #~~ )

To. Anothony Wills (WARDEN)                    Date  9-24-24
from: Shawn Randall Y37024                      Cell# NORTH 2  8-24

I'm being ~~Punched~~ Punched for something I've already been found not Guilty for. I got a ticket the same ticket for the second time for 203. I believe I'm being made to suffer because I've written Grievances or Request Slip Ask for help Against Internal Affairs for targeting ME. Please look into this Thank You.

To: Kevin Reichert    (Asst Warden)                    Date 9-24-25

from: Shawn Randall (Y37024)          Cell# North 2 8 Gallery

I want to inform you that internal Affair is harassing me. And making things up ~~so~~ Saying Drug's were in my cell when They ~~wasn't~~ They're writting me up for An incident on 8-15-24 were I was given a ticket And found Not Guilty off. Not they coming with Another ticket for the same day incident.

To: Kevin Reichert    (Asst Warden)                    Date 9-24-25

from: Shawn Randall (Y37024)          Cell# North 2 8 Gallery

Exhibit # A

To: Sandy L. Walker                    Date 9-24-24
From: Shawn Randall Y37024             Cell # North 2  8-38

I just got a ticket for a 203 charge that I Already was found not Guilty cause my cell-mate told Adjustment committee that He was the one guilty of Everything We both were charged for Also You found me Not Guilty And let me Out of Restrictive housing. Please Just look at the D.R. 504 Date 8-15-24 You'll See what I'm talking About.

Exhibit # A.

To: Anothony B Jones (ADJustment committee) Date 9-24-24

from Shawn Randll YJ7024          Cell# North 2  8-38

I'm trying to Remind the Adjustment committee of A D.R. 504 ticket for 203 against myself and my cell-mate At that time. It was written on 8-15-24 and heard on 8-20-24 In which I was found Not Guilty cause my cell-mate Plead Guilty that Everything found was his. And Yourself And Sandy walker heard and found me not guilty. Now I'm being written up for the Same charge for the Same Day incident. This is Double Japperdy

To Ms. Woodley (Internal Affairs)                    Date 9-24-24

from Shawn Randall Y37024                    Cell # North 2 836

Im trying to understand How you and Lieutenat Dallas
Are the ones who shake down my cell on August 15.
2024. Write me a D.R. 504 for 203 Drug and Drug P
But you didn't add anywere in the ticket or shakedown
Slip that a phone book was found that had drug's in it.
it wasn't until After I was found NOT Guilty And Asked
The warden to look into why Your office was harassing
me That someone in Your office wrote me up
for the same charge dating back from August 15, 2024. Why
wasn't I told that drug's were found in A phone book, OR
that I was being Placed on investagation.

To. Ms. Phillips    (Mental Health)    Date 10-18-24
from. Shawn Randall Y37024        cell# North 2 8-38

I need to speak with someone I feel like my mental Health is bad I'm not Allowed Any Yard or out the cell time I've been trying to Ask for help while Ya'll doing Ya'll Rounels. How ever I don't feel safe talking infront of the C/o's. I need A 1 on 1 or group so we can tALK. Please cAll me Soon.

TO: Ms. Salger    (Mental Health)    Date 10-18-24
from: Shawn Randll Y37024    Cell # North 2   8-38

I need to talk to someone cause I don't feel safe talking in front of the c/o's while Ya'll do Rounds I need a 1 on 1 or group. Please call me soon because They're not letting Me out my cell for Yard or Nothing for that matter. Thank You!

To: Anothony Wills    (WARDEN)                    Date 10-18-24

from: Shawn Randall YJ7024        Cell # North 2 8-38

I asked every gallary officer about If I could go to yard and keep being told over and over by "All staff" I don't call the plays I just work here, It's been almost a month and I haven't had 1 minute of yard time since I came to the Restrictive housing And I have serious medical problems were I have the need to work out to stay PAIN free. So Please Can I get some yard.

Exhibit # B

To: Major McClanahon (North 2 Major)    Date    10-18-24
from:                                    Cell# North 2  8-38

I have not Refused once to come out for Health care sick-
calls, Doctor's Appointment, Mental Health, Yard, Shower's Nothing So can
You Please Tell Me why I can't go to any of this thing's. I Really need
Some Yard I haven't been Allowed to go to Any Yard's Please
Allow me to go to yard Soon, Thank You!

TO: Anothony Wills  (WARDEN)                    Date 12-18-24

From                                    Cell # North 2  8-38

   At this point I know you Are aware that NO body is being Allowed Yard time cause Everybody keep asking All C/o's Lieutant's, and major's what's up with yard. I have a ~~condition~~ condiction and need out the cell time to work out to insure that I'm pain free and can move around. I'm in serious pain And haven't been allowed to see sick call when I sign up.

Exhibit # G

TO: Major McClanahon (north 2 major) Date 12-18-24

From:                                            Cell# North 2  8-38

I want to know why You aren't Letting me out for Yard. I've not been Allow 1 yard since coming to Restrictive Housing in September. Please Allow North 2 Restrictive Housing out to yard All this in the cell stuff is Messing with My Mental.

Exhibit C.

To: Ms. Salgee    (Mental Health)    Date 12-18-24

from: Shawn Randll V37024    Cell # North 2 8-38

I been writing Request slip after Request slip Pleading for help But NOBODY from Your Office has come to See ME. I keep telling Ya'll I Don't feel Safe talking to Ya'll infront of the C/o's. Being locked in this cell Everyday All Day without yard is driving Me crazy Please call Me Soon.

Exhibit #C

To: Ms. Phillips        (Mental Health)        Date 12-18-24

From: Shawn Randall Y37024        Cell# North 2 8-38

I need to be seen by mental health for a 1 on 1 or group so I can talk to someone I don't feel safe talking to you in front of the C/O's. Being locked in this cell 24 hrs a Day 7 Day's a week without no out the cell time is driving me crazy Please call me for a session

Exhibit # D.

TO: Ms. Phillips          (Mental Health)          Date 3-2-25

from: Shawn Randall Y37024          Cell # NORTH 2    4-29

I need to see someone Anybody I feel like IM losing my mind I haven't been out my cell for any Yard in month's I Ask the gallary officer for them to call Mental Health And Let them know I need to see someone. I was told If I wasn't going to kill myself or Someone esle then write A Request Slip Please, Please Help me. Come tAlK to me Please.

Exhibit # D

TO: Ms. Salger    (Mental Health)    Date 3-2-25
from: Shawn Randall (Y37094)    Cell # North 2 4-34

I Need to talk with ANYBODY I'M
losing my mind I been in this cell for months And
no out the cell time this cell is getting smaller.
Please AnyBody who is Reading this Kite From Mental Health
I NEED A 1 on 1 baddly

Exhibit #

Illinois Department of Corrections
Notification of Mail Scan Status

Menard Correctional Center
Facility

Individual in Custody Name: Shawn Randall                     ID #: Y37024

CAO Rationale for Placement of Above Listed Individual in Custody on Mail Scan Status:

On August 15, 2024, the Investigations Unit conducted a search of cell 5-01 in the East Cell House where RANDALL resided at the time of the search. During the search staff discovered an address/phone book on the bottom bunk bed which also contained items with RANDALL's name and number on them. Inside of the address book were five ID sized pieces of paper and a handwritten note that contained five square pieces of paper. Four of the ID sized pieces measured approximately 2 ½" x 3 ¼" with one missing a 1" x 1" piece. The fifth ID sized piece measured approximately 2" 3 ½". The five square pieces of paper measured approx. ¾" x ¾". Pieces from all of the paper were field tested and yielded a preliminary positive result for Synthetic Cannabinoids. On September 23, 2024, the Illinois State Police Division of Forensic Services returned the Drug Chemistry Report on the pieces of paper discovered in the address/phone book as being Synthetic Cannabinoids.

Anthony Wills     Digitally signed by Anthony Wills
Date: 2025.01.08 10:02:30 -06'00'

CAO Signature                          01/08/2025
                                       Date

Individual in Custody's Rebuttal to Recommendation for Placement on Mail Scan Status:

Individual in Custody Name and ID Number            Date

Deputy Director's Decision for Placement on Mail Scan Status (for initial placement and extensions):

☑ Approve          ☐ Deny

Angela Locke/lg

Deputy Director Signature                         1/9/25
                                          Date

Distribution: Internal Affairs; Mailroom; Master File      Printed on Recycled Paper      DOC 0729 (Eff. 6/2023)

Exhibit # 1

Illinois Department of Corrections
Individual in Custody Grievance

Pilot Program Only

Housing Unit: N 2 8-38    Bed #: _____

| Date: 10-01-24 | Individual (please print): Shawn Randall | ID #: Y37024 | Race (optional): WK |

Current Facility: Menard C.C.

Facility where grievance issue occurred: Menard C.C.

Nature of Grievance:
- ☐ Staff Conduct
- ☐ Medical Treatment
- ☑ Disciplinary Report: 9/24/2024    Menard c.c.
  - Date of Report    Facility where issued
- ☐ ADA Disability Accommodation
- ☐ Restoration of Sentence Credit
- ☐ Dietary
- ☐ Personal Property
- ☐ Mail Handling
- ☐ PREA
- ☐ HIPAA
- ☑ Other (specify): Due process violation

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":
- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

On September 24,2024 I was issued a disciplinary ticket by C/o R.Gearhart (3374) for a incident that happen on August 15,2024 I got written up for drug and drug Paraphernalia where they claimed to have found synthetic Cannabeids in my phonesock, But I was already written up on August 15,2024 for the same charges but all they claimed to find was 190 juices 3 40 apples I was taken to Seg for this where my ticket was dismiss and I was never put on investigation. This is double jeopardy! On my Original Incident report a shakedown Slip there was no report of a phonesock with drug In it found. The only thing that is on this shakedown slip was juices, apples, TV, and headphones. On August 15,2024 my

☐ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☑ Check if this is NOT an emergency grievance
☑ Continued on Reverse

Relief Requested: I want said staff C/o's Suspended without pay a permently Relived of their duties as I.D.O.C Correctional officers and to never be allowed in to serve duties as I run per said Facility or any staff member or contracted I want this ticket and punishment to be expinsed, expungled, Relived from restrictive housing/seg, compensation for the days I've done thus far in Restrictive housing, A transfer to Danville, Graham, Centralia, Lawrence, Illinois river, C.C. or Centralia, for my safety and my security to be free from harassment, retaliation and intimidation.

| Shawn Randall | Y37024 | 10-01-24 |
| Individual in Custody Signature | ID # | Date |

Counselor Response (if applicable):    Date Received: _____
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer

EMERGENCY REVIEW:    Date Received: _____

Is this determined to be of an emergency nature:
☐ Yes, expedite emergency grievance.
☐ No, an emergency is not substantiated. Individual should submit this Grievance according to standard grievance procedure.

_____
Chief Administrative Officer Signature    Date

Assigned Grievance #/Institution: K4-1024-5027

First Level Received: _____

Second Level Received: MEN OCT 03 2024

___ Please check if using if utilizing follow up DOC 0743p

C/O Gearhart 3374    3A-Disciplinary Ticket

Pilot Program Only

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Cell was shaken down by Lt. Dallas #13539 and SGT. Wooky #3541. Who never made report of these findings so all I can assume is these drugs and phonebook were planted in my cell or never existed in retaliation for beating my prior original ticket. My 4th, 5th and 14th amendment was violated when property was allegedly taken out of my cell and not mention as contraband in my original IDR this is Due process violation. The fact they never indicated they found drugs in a phonebook is staff misconduct. If there was any contraband inside my cell found according to Administrative codes/Directives. I was suppose to be placed under investigation. This is a clear example of Double jeopardy. This is also a violation of my 8th Amendment cruel and unusual punishment for planting drugs on me and making me go to Seg twice for the same incident. Committing Deliberate indifference.

Also the form in which this Disciplinary ticket was wrote on is void/invalid on the bottom right corner it says 7/2021 this ticket is effectively 3 years old. So the Charge of 203 Drugs and Drug paraphanills is void/invalid also the ticket should have the current year 2024 or 2025 this is a due process violation. This ticket should be expunged along w/ the punishment !!

As well the chemistry report the claim to have gotten from Illinois division of Forensic Services is Questionable! It did not come back as Synthetic Cannabinoids

Today I told Lautient Walker and Sargent Jones that I was already placed in Seg for this ticket and that a phonebook with drugs was not on my shakedown slip. I told them this was me being punish for the same ticket twice & this was violating the rules in 504.30 P&E and 504.50 DD. I also informed them I was never put on investigation alert but my ticket was dismissed

EXHIBIT #1

N78-38

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 10/03/2024 | Date of Review: 12/10/2024 | Grievance #: K4-1024-5027 |
| Individual in Custody Name: Randall, Shawn | | ID#: Y37024 |

**Nature of Grievance:**

Disciplinary Report dated 09/24/2024 issued by R. Gearhart for 203 Drugs & Drug Paraphernalia; 202402267/1-MEN

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 10/01/2024 regarding the above disciplinary report. He grieves he was already written up for this on 08/15/24 and that ticket was dismissed. Claims double jeopardy.

Relief Requested - "I want said staff C/O's suspended without pay or permently relived of their duties as I.D.O.C. Correctional Officers and to never be sworn in to serve duties as I.D.O.C. nor GED facilities as any staff member or contractor. I want this ticket and punishment to be expunged, immediately release from restrictive housing/seg, compensation for the days I've done thus far in restrictive housing, a transfer to Danville, Graham, Centralia, Lawrence, Illinois River C.C., or Galesburg. For my safety and my security to be free from harasament, retaliation and intimidation."

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures, & contacted the Adjustment Committee and Internal Affairs.

Per DR 504.80 Prior to the hearing, the Individual in Custody may request that witnesses be interviewed. No requests for witness received by the Committee. The Individual in Custody refused to sign the Disciplinary Report when issued on 09/24/2024 as noted on the DOC 0317.

----------------------------CONTINUED ON BACK---------------------------------->>>

**Recommendation:**

Based upon a total review of all available information, and a compliance check of the procedural due process safeguards outlined in Departmental Rule 504, this Grievance Officer recommends the Individual in Custody's grievance be DENIED. Based on, the nature of the charges and disciplinary history, the sanctions imposed by the Adjustment Committee are found to be correct as written and processed in accordance with DR504.  Disciplinary action shall remain as imposed.

| J. Guetersloh - Correctional Counselor 1 | Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2024.12.10 09:51:29 -06'00' |
|---|---|
| Print Grievance Officer's Name | Grievance Officer's Signature |

(Attach a copy of Individual in Custody's Grievance, Including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 12/10/2024 | ☑ I concur   ☐ I do not concur   ☐ Remand | |

**Action Taken:**

| Kevin Reichert | Digitally signed by Kevin Reichert Date: 2024.12.12 16:14:55 -06'00' | |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director.  I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Individual in Custody's Signature | ID# | Date |
|---|---|---|

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE (Continued)

---CONTINUED--->>>

The Committee advised the hearing was in accordance with DR 504.80. The Individual in Custody was permitted to make statements in his defense and the Individual in Custody plead not guilty, as noted on the final summary.

According to the disciplinary report written by C/O R. Gearhart, based on violations that have been discovered during the course of an internal investigation that concluded on today's date. On August 15, 2024, the Investigations Unit conducted a search of cell 5-01 in the East Cell House. At the time of the search RANDALL and Individual in Custody TRAVION LOCKET M32101 both resided cell 5-01. During the search staff discovered an address/phone book on the bottom bunk bed. At the time of the search RANDALL was known to have resided on the bottom bunk bed, which also contained item's with RANDALL's name and number on them. Inside of the address book was five ID sized pieces of paper and a handwritten note that contained five square pieces of paper. Four of the ID sized pieces of paper measured approximately 2 1/4" x 3 1/4" with one missing a 1" x 1" piece. The fifth ID sized piece of paper measured approximately 2" x 3 1/4". The five square pieces of paper measured approximately 3/4" x 3/4". Pieces from all of the paper was field tested and yielded a preliminary result for Synthetic Cannabinoids. The pieces of paper were sealed in an evidence bag and stored in the Internal Affairs Vault until they were delivered to the Illinois Division of Forensic Services on August 28, 2024. On September 23, 2024, the Illinois Division of Forensic Services returned the Drug Chemistry Report on the pieces of paper discovered in the address/phone book LOCKETT and RANDALL's cell as being Synthetic Cannabinoids. Proper Chain of Command notified. Individual in Custody Randall-Y37024 was identified by Institutional Graphics and offender O360.

Substance was field tested and came back positive for Synthetic Cannabinoids. Positive preliminary test results were sent out to Illinois State Police Crime Lab for confirmation and came back positive for Synthetic Cannabinoids. Internal Affairs verified this information.

Individual in Custody was verified to have resided in the cell at the time of the incident.

Per DR 535.130 Security of Personal Property – Committed persons are responsible for their personal property, which is in their possession or under their control, i.e., on their person or in their cell, living or work area.



Housing Unit: N2-8-38  Bed #: _____

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Pilot Program Only

| Date: 11/19/24 | Individual (please print): Shawn Randall | | ID #: Y37024 | Race (optional): BlK |

Current Facility: Menard C.C

Facility where grievance issue occurred: Menard C.C

Nature of Grievance:
- ☑ Staff Conduct
- ☐ Medical Treatment
- ☑ Disciplinary Report: 9/24/2024  Menard
  Date of Report    Facility where issued
- ☐ ADA Disability Accommodation
- ☐ Restoration of Sentence Credit
- ☐ Dietary
- ☐ Personal Property
- ☐ Mail Handling
- ☐ PREA
- ☐ HIPAA
- ☐ Other (specify): _____

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

On 9/24/2024 I was given a ticket for 203 Drugs & Drug Paraphernalia by C/O R. Greathart #3374. The ticket said they found pieces of paper that tested positive for Synthetic Cannabinoids but I got the chemistry report back from the Illinois Division of Forensic Services and the chemical break down never came back as Synthetic Cannabinoids. The only findings was Methyl 3,3-dimethyl-2-[1-Pent-4-enyl]ndazole-3-Carbonyl]amino] butanoate. (MDMB-4en PINACA), a methyl 2-(7H-indazole-3-carboximido)-3,3-dimethylbutanoate compound. This is a violation of my 8th & 14th & 4th amendment for being in Seg for a ticket

- ☐ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
- ☑ Check if this is NOT an emergency grievance
- ☐ Continued on Reverse

Relief Requested: I would like immediate release out of Seg and paid for all the days of Seg I did which was never necessary. I would also like a instant transfer.

_Shawn Randall_    Y37024
Individual in Custody Signature    ID #    Date

**Counselor Response (if applicable):**
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Date Received: _____

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer.

| EMERGENCY REVIEW: | Date Received: _____ |

Is this determined to be of an emergency nature:
- ☐ Yes, expedite emergency grievance.
- ☐ No, an emergency is not substantiated. Individual should submit this Grievance according to standard grievance procedure.

_____    _____
Chief Administrative Officer Signature    Date

Assigned Grievance #/Institution: K4-1124-6091

First Level Received: _____

Second Level Received: MEN NOV 20 2024

3A- ticket thrown out and

Please check if using if utilizing follow up DOC 0743p
released from K.H

In left margin: Test results Attached

In right margin: Test results attached

Pilot Program Only

**Illinois Department of Corrections**
**Individual in Custody Grievance**

that is not true. Dallas #13539 & Sgt Wooley #3542 Fabricated this ticket!

I attached the results and findings to the grievence

Exhibit #2

Illinois Department of Corrections (Southern)

Page 1 of 8



Illinois State Police
Division of Forensic Services
Forensic Sciences Command
Metro-East Forensic Science Laboratory

| | |
|---|---|
| DFS Case #: | ISP24-032602 |
| Agency: | Illinois Department |
| Agency Case #: | 2024-MEN-5377 |
| Assignment # | 1 |
| Analyst: | Joel Gray |
| Start Date: | 09/17/2024  End Date:  09/23/2024 |

## Drug Chemistry Laboratory Worksheet

**Item # 1: self sealed clear plastic evidence bag containing 5 pieces of paper and 1 zippered plastic bag containing 5 smaller pieces of paper**

Item 1-1:  paper
Weight
net weight:  0.315 gram  Balance #: 415100
Item 1-1:

### Gas Chromatograph/Mass Spectrometer (GC/MS)

Instrument: Sinclair (HP-1)
Miscellaneous Information/Extraction: methanol
Blank
Contains (report):  MDMB-4en-PINACA
Notes: Peaks in blank checked

| Retention Time Comparison Information (Std=Standard, RT=Retention Time) | | | | | | |
|---|---|---|---|---|---|---|
| Sample Name | Std RT | -1% of Std RT | +1% of Std RT | Sample/Low RT | High RT | All within 1% |
| MDMB-4en-PINACA | 7.639 | 7.562 | 7.715 | 7.677 | | Yes |

Instrument: Six (HP-5)
Miscellaneous Information/Extraction: methanol
Blank
Contains:  MDMB-4en-PINACA
Item 1-2:  paper Not Analyzed

Repackaging Seal: heat sealed

| LAB ITEM# | DESCRIPTION | FINDINGS |
|---|---|---|
| 1-1 | 0.3 gram of paper | Methyl 3,3-dimethyl-2-[(1-pent-4-enylindazole-3-carbonyl)amino] butanoate(MDMB-4en-PINACA), a methyl 2-(1H-indazole-3-carboxamido)-3,3-dimethylbutanoate compound |
| 1-2 | Paper | Not Analyzed |

Page 1 of 1

ILLINOIS DEPARTMENT OF CORRECTIONS
### RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

N2-4-54

| Grievance Officer's Report |
|---|

**Date Received:** 11/20/2024     **Date of Review:** 12/27/2024     **Grievance #:** K4-1124-6091

**Individual in Custody Name:** Randall, Shawn     **ID#:** Y37024

**Nature of Grievance:**

Disciplinary Report dated 09/24/2024 issued by R. Gearhart for 203 Drugs & Drug Paraphernalia; 202402267/1-MEN

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 11/19/2024 regarding the above disciplinary report. He grieves the chemical breakdown never came back as synthetic cannibinoids.

Relief Requested - "I would like immediate release out of seg and paid for all the days of seg I did which was never necessary. I would also like a instant transfer."

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures, & contacted the Adjustment Committee and Internal Affairs.

Per DR 504.80 Prior to the hearing, the Individual in Custody may request that witnesses be interviewed. No requests for witness received by the Committee. The Individual in Custody refused to sign the Disciplinary Report when issued on 09/24/2024 as noted on the DOC 0317.

The Committee advised the hearing was in accordance with DR 504.80. The Individual in Custody was permitted to make statements in his defense and the Individual in Custody plead not guilty as noted on the final summary.

------------------------------------------------CONTINUED ON BACK------------------------------------------------>>>>

**Recommendation:**

Based upon a total review of all available information, and a compliance check of the procedural due process safeguards outlined in Departmental Rule 504, this Grievance Officer recommends the Individual in Custody's grievance be DENIED. Based on, the nature of the charges and disciplinary history, the sanctions imposed by the Adjustment Committee are found to be correct as written and processed in accordance with DR504. Disciplinary action shall remain as imposed.

J. Guetersloh - Correctional Counselor 1                     Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2024.12.27 13:21:26 -06'00'

Print Grievance Officer's Name                                          Grievance Officer's Signature

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 12/27/2024          ☑ I concur     ☐ I do not concur     ☐ Remand

**Action Taken:**

Kevin Reichert          Digitally signed by Kevin Reichert
                        Date: 2025.01.06 13:36:38 -06'00'
Chief Administrative Officer's Signature                                          Date

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Shaun Randall                                    Y37024
Individual in Custody's Signature                     ID#                          Date

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE (Continued)

---CONTINUED--->>>

According to the disciplinary report written by C/O R. Gearhart, based on violations that have been discovered during the course of an internal investigation that concluded on today's date. On August 15, 2024, the Investigations Unit conducted a search of cell 5-01 in the East Cell House. At the time of the search RANDALL and Individual in Custody TRAVION LOCKET M32101 both resided cell 5-01. During the search staff discovered an address/phone book on the bottom bunk bed. At the time of the search RANDALL was known to have resided on the bottom bunk bed, which also contained item's with RANDALL's name and number on them. Inside of the address book was five ID sized pieces of paper and a handwritten note that contained five square pieces of paper. Four of the ID sized pieces of paper measured approximately 2 1/4" x 3 1/4" with one missing a 1" x 1" piece. The fifth ID sized piece of paper measured approximately 2" x 3 1/4". The five square pieces of paper measured approximately 3/4" x 3/4". Pieces from all of the paper was field tested and yielded a preliminary result for Synthetic Cannabinoids. The pieces of paper were sealed in an evidence bag and stored in the Internal Affairs Vault until they were delivered to the Illinois Division of Forensic Services on August 28, 2024. On September 23, 2024, the Illinois Division of Forensic Services returned the Drug Chemistry Report on the pieces of paper discovered in the address/phone book LOCKETT and RANDALL's cell as being Synthetic Cannabinoids. Proper Chain of Command notified. Individual in Custody Randall-Y37024 was identified by Institutional Graphics and offender O360.

Substance was field tested by Internal Affairs and came back positive for Synthetic Cannabinoids. Positive preliminary test results were sent out to Illinois State Police Crime Lab for confirmation and came back positive for Synthetic Cannabinoids. Individual in Custody was verified to have resided in the cell at the time of the incident.

Per DR 535.130 Security of Personal Property – Committed persons are responsible for their personal property, which is in their possession or under their control, i.e., on their person or in their cell, living or work area.



**Housing Unit:** N24-29  **Bed #:** ___

**Illinois Department of Corrections**
**Individual in Custody Grievance**

**Pilot Program Only**

| Date: 1/20/25 | Individual (please print): Shawn Randall | | ID #: Y37034 | Race (optional): BIK |

| Current Facility: Menard | Facility where grievance issue occurred: Menard |

**Nature of Grievance:**

☑ Staff Conduct
☐ Medical Treatment
☐ Disciplinary Report: _____
   Date of Report    Facility where issued

☐ ADA Disability Accommodation
☐ Restoration of Sentence Credit
☐ Dietary

☐ Personal Property
☑ Mail Handling

☐ Other (specify): _____

☐ PREA
☐ HIPAA

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

on 1-09-25 I was informed that I was being placed on Mail Watch and my mail would be scanned. I have not violated any 504's or A.D.'s To be placed on mail scan. It is a violation of my constitution rights To Tamper or Deny me my original Mail without justifiable reason's or security purposes! I Have Never violated any state or federal laws Dealing with mail nor have I ever recieved a Ticket for anything Dealing with the mail system! so I'm confused why I'm being placed on this. If Menard C.C. feels I violated any 504's or A.D.'s Please

☐ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☑ Check if this is NOT an emergency grievance
☑ Continued on Reverse

**Relief Requested:** That I be Tooken off Mail-scan and Any and All Cost For Mail sent to sender be refunded. Also That All Mail returned or Destroyed be Documented!

Shawn Randall    Y37034    1/20/25
**Individual in Custody Signature**    ID #    Date

**Counselor Response (if applicable):** Strong    1-23-25    **Date Received:** 1-23-25
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

See attached response.

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer.

| **EMERGENCY REVIEW:**    Date Received: _____ | **Assigned Grievance #/Institution:** K4-0125-0340 |
| Is this determined to be of an emergency nature: ☐ Yes, expedite emergency grievance. ☐ No, an emergency is not substantiated. Individual should submit this Grievance according to standard grievance procedure. | **First Level Received:** MEN JAN 27 2025
**Second Level Received:** MEN FEB 3 2025
___ Please check if using if utilizing follow up DOC 0743p |
| _____    _____
Chief Administrative Officer Signature    Date | 15- E. placed on mail watch without notice |

Pilot Program Only

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Inform me of it!

Illinois Department of Corrections                    Pilot Program Only
**Follow-up Individual in Custody Counselor Response**

Housing Unit: North 2 _____ Bed #: 4-29 _____ Assigned Grievance Number: K4-0125-0340 _____

| Date: | Individual in Custody Name (please print): | ID #: | Race (optional): |
|---|---|---|---|
| 01/20/2025 | Randall, Shawn | Y37024 | |

| Current Facility: | Facility where grievance issue occurred: |
|---|---|
| Menard Correctional Center | Menard Correctional Center |

Response to grievance #K4-0125-0340:

1.) Per Offender 0360, it does not show that individual Randall is on mail watch. Grievance content does not state who told individual that he is under mail watch. Unable to substantiate claims stated in grievance content.

2.) Per AD 05.02.151, Mail Procedures for Individuals in Custody, pg. 6, section Mail Scan, it states, "The recommendation to implement the mail scan process shall be at the discretion of the CAO and shall only be made for purposes of maintaining the safety and security of the facility."

3.) Per AD 05.02.151, Mail Procedures for Individuals in Custody, pg. 6, section Mail Scan, it states "If the individual in custody elects to appeal the Regional Deputy Director's decision to place him or her into mail scan status, he or she shall indicate the decision to appeal on the DOC 0729 and submit the form to the Chief of Operations, within fourteen (14) calendar days from the date the DOC 0729 was served."

Strong                                                              01/23/2025
Counselor Name (Print)        Counselor Signature                   Date

*Exhibit # 3*

*N2-4-25*

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

| Grievance Officer's Report | |
|---|---|

**Date Received:** 02/03/2025    **Date of Review:** 03/11/2025    **Grievance #:** K4-0125-0340

**Individual in Custody Name:** Randall, Shawn    **ID#:** Y37024

**Nature of Grievance:**

Mail Scan Status

**Facts Reviewed:**

Grievance Office reviewed on 03/11/2025 - Per AD 05.02.151, The CAO at the Menard Correctional Center, in an effort to prevent contraband from entering the facility, may recommend an individual in custody for the mail scan process or digital mail delivery service, if applicable, on all non-privileged mail prior to delivery to an individual in custody. The recommendation to implement the mail scan process shall be at the discretion of the CAO and shall only be made for purposes of maintaining the safety and security of the facility.

The individual in custody shall be provided an updated notification of the final decision for mail scan status by receipt of the DOC 0729 and notified of his or her right to appeal the Regional Deputy Director's decision.

If the individual in custody elects to appeal the Regional Deputy Director's decision to place him or her into mail scan status, he or she shall indicate the decision to appeal on the DOC 0729 and submit the form to the Chief of Operations, within fourteen (14) calendar days from the date the DOC 0729 was served.

If an appeal is not submitted by the individual in custody and received by the Chief of Operations within fourteen (14) days, the decision on mail scan status placement shall become final.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends the Individual in Custody's grievance be DENIED. This is an administrative decision.

J. Guetersloh - Correctional Counselor II                Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2025.03.11 14:19:58 -05'00'

Print Grievance Officer's Name                Grievance Officer's Signature

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | |
|---|---|

**Date Received:** 03/11/2025        ☑ I concur    ☐ I do not concur    ☐ Remand

**Action Taken:**

Kevin Reichert    Digitally signed by Kevin Reichert Date: 2025.03.13 15:20:19 -05'00'

Chief Administrative Officer's Signature                Date

| Individual in Custody's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

*Shawn Randall*        Y37024

Individual in Custody's Signature        ID#        Date

GRN 6.
Exhibit #4

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Pilot Program Only

Housing Unit: N2    Bed #: 4-29

| Date: 2/25/25 | Individual (please print): Shawn Randall | ID #: Y37024 | Race (optional): BIK |
|---|---|---|---|

Current Facility: Menard

Facility where grievance issue occurred: Menard

Nature of Grievance:
- ☑ Staff Conduct
- ☑ Medical Treatment
- ☐ Disciplinary Report: _____ _____
  Date of Report    Facility where issued
- ☐ ADA Disability Accommodation
- ☐ Restoration of Sentence Credit
- ☐ Dietary
- ☐ Personal Property
- ☐ Mail Handling
- ☑ Other (specify): Yard/ Recreation time
- ☐ PREA
- ☐ HIPAA

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

I was housed in NorthA under "Extended Restrictive Housing" conditions from 9-24-24 to 3-24-25 and was not once offered Recreation in that 6 month period. Menard for 6 months has been completely with holding all out-of-Cell exercise in violation of the eighth Amendment of the United States Constitutions Prohibition of Cruel and Unusual Punishment Being held in long term Extended Restrictive Housing (ERH) for months at a time and being deprived of Out-of-Cell necessary exercise is seriously negatively affecting my physical, Mental, and emotional health. I have repeatedly complained to Menard officials and wrote grievances about not seeing Sick call for my health. I've filed emergency grievances Straight to CAO Anthony Wills explaining my medical problems and how I needed medical attention. Medical

☑ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☐ Check if this is NOT an emergency grievance
☑ Continued on Reverse

Relief Requested: I am requesting injunctive Relief to fix these conditions as soon as possible. As well as Punitive & Compensatory Damages for the objective serious deprivations I'm experiencing while being housed in North 2 RH. Also I'm am requesting Medical Attention ASAP. I need to Know why my stomach is cramping and my feces has blood in it

Shawn Randall
Individual in Custody Signature

Y37024
ID #

02/25/25
Date

Counselor Response (if applicable): Strong ⟨signature⟩ 3-6-25    Date Received: 3-6-25
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

See attached response.

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer.

EMERGENCY REVIEW:    Date Received: FEB 2 0 2025

Is this determined to be of an emergency nature?
☐ Yes, expedite emergency grievance.
☑ No, an emergency is not substantiated. Individual should submit this Grievance according to standard grievance procedure.

⟨signature⟩    3.3.25
Chief Administrative Officer Signature    Date

Assigned Grievance #/Institution: K4-0225-1192

First Level Received: MEN MAR 05 2025

Second Level Received: MEN MAR 13 2025

___ Please check if using If utilizing follow up DOC 0743p

2I- out of Cell time
11A- NSC- NORESponse

Distribution: Master File, Individual    Page 1 of 2    DOC 0046 (Rev. 06/2022)

Pilot Program Only

## Illinois Department of Corrections
### Individual in Custody Grievance

Personal have ignored all of my sick call request for months. Menard has done Nothing about my plans for the last 6 months for recreation & medical attention. I cannot exercise due to the confined space of these tiny 4ft by 5y loft cells. Out of cell exercise is a necessary requirement for Physical and mental well being. I have repeatedly told cell house security staff C/o's Heins, Choate, Fattal, Baker, Bent, and Chandler about these complaints on a daily basis at every opportunity. I have told mental health professionals Salger and Phillips during weekly rounds at every opportunity. I asked for yard, Groups, even "one-on one" so I can get out of cell time cause I feel I'm losing my mental. The cells in North 2 are Not meant to be used as exercise areas nor can they be converted to do so in any circumstance. It's documented that I've been shot in my leg and it broke so if I dont get to move around it tends to cramp up. And lately I've been having real bad clamps in my stomach and when I use the bathroom there is blood in my Feces. I can only assume this is because lack of movement because when I use the bathroom I write healthcare to see whats wrong I get no response or medical attention. Not Knowing whats wrong with me for 6 months is causing me mental and emotional anguish. I've been having headaches, migraines, and Constipation as well. Anxiety and depression always follows because I feel "trapped" and unable to move due to Claustrophobia. In PH.II section 2 of ADR it states "A minimum of ten hours of Recreation Per week inclusive at no fewer than one hour of exercise outside of the cell five days Per week shall be Provided to every individual in custody who has been placed in RH. This shall include indoor and outdoor recreation as scheduled. The time of recreation shall be noted on DOC 0506. This lack of Necessary Recreational opportunities is torturous to my Persons, and is a clear violation of L.D.O.C's Administrative Directives for Restrictive Housing and the US Constitution Prohibition of cruel and unusual Punishment within the 8th Amendment!

Prison Administrates at Menard CC claim North 2 Restrictive Housing is on a "level 3 lockdown" due to having "Critically low" staff levels -- Therefore denying all inmates housed in North 2 RH any opportunity for exercise due to "Safety and Security of the institution" However in reality Menard CC has only been on level 3 lockdown for 9 days in last year. Regardless the "Safety and Security of the institution" does not give Menard CC the impunity to Mentally and Physically torture it's R.H inmates for months, and/or years. It is Menard CC responsibility to maintain contemporary standards once they've been informed of a deficiency.

This extended denial of exercise Privileges was not brought on by this L.I.I.C's misconduct or Propensity to escape in any way. Menard CC has had over a year to fix it's staff shortage while I have suffered repetitive form of torture. I have filed multiple Grievances regarding these conditions. Officers at Menard CC routinely intercept and destroy grievances of this nature in retaliation to Prevent inmates from exhausting our Administrative Remedies or deny us access to Grievances in the 1st place. Now that staff Administrators at Menard CC (Warden Anthony Wills, Major McClanahon, Major Demond and C/o's Heins, Choate, Fattal, Baker, Deputy Chandler & Falister) have been made aware of the situation, and my subsequent pain and suffering any delay in remedying the situation should be viewed as Deliberate indifference to the torture of entire L.I.I.C Population in N2 RH. Akin to criminal negligence but, moreover specifically to the applications of this plaintiff.

Illinois Department of Corrections
**Follow-up Individual in Custody Counselor Response**                     Pilot Program Only

Housing Unit: North 2 _____ Bed #: 4-29 _____ Assigned Grievance Number: K4-0225-1192

| Date: | Individual in Custody Name (please print): | ID #: | Race (optional): |
|---|---|---|---|
| 02/25/2025 | Randall, Shawn | Y37024 | |
| **Current Facility:** | | **Facility where grievance issue occurred:** | |
| Menard Correctional Center | | Menard Correctional Center | |

Response to grievance #K4-0225-1192:

1.) In regards to medical, per offender 0360 it shows you were scheduled to see medical on 2-24-25, 2-10-25, 2-8-25, 2-6-25, and 2-24-25.

2.) In regards to yard time, per AD.05.01.301 Lockdown-II-G.-3. Level III Lock Down- Staff Only-Level III Lock Down shall only be utilized when staffing levels are not available for suitable post coverage; however, programs, privileges, and services may still be provided as determined and authorized by the CAO, based on facility operational requirements and the deployment of available security staff.
Note, Menard's lock-down status is because of staffing levels were deemed as critical. Administration/CAO determined what can be ran and is not deemed essential (yard has been deemed as an unessential.)

Strong                              03/06/2025
Counselor Name (Print)       Counselor Signature              Date

Distribution: Master File            Printed on Recycled Paper          DOC 0743p (Eff. Pilot Version Only)
Individual in Custody              Page 1 of 1

Exhibit #4

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE**

E-5-14

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 03/13/2025 | Date of Review: 03/27/2025 | Grievance #: K4-0225-1192 |
| Individual in Custody Name: Randall, Shawn | | ID#: Y37024 |

**Nature of Grievance:**

No offered recreation since being in Restrictive Housing from 09/24/24 to 02/25/25.

**Facts Reviewed:**

Grievance Office reviewed on 03/27/2025 - Menard Correctional Center is placed on a level 3 lockdown daily per the Warden as directed to Deputy Director as a result of a staff shortage being experienced at the facility and in accordance with A.D. 05.01.301. Programs, privileges and services may still be provided as determined and authorized by the CAO, based on facility operational requirements and the deployment of available security staff. A.D. 05.15.100 states recreational opportunities shall not be required during institutional lockdowns or during institutional emergencies, including, but not limited to, riots, strikes, fires, work stoppages, power outages, pandemics and natural disasters. This is an administrative decision.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends the Individual in Custody's grievance be DENIED. This is an administrative decision.

J. Guetersloh - Correctional Counselor II

Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2025.03.27 14:04:00 -05'00'

| Print Grievance Officer's Name | Grievance Officer's Signature |
|---|---|

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 03/27/2025 | ■ I concur   ☐ I do not concur | ☐ Remand |

**Action Taken:**

Kevin Reichert  Digitally signed by Kevin Reichert Date: 2025.03.27 15:14:06 -05'00'

| Chief Administrative Officer's Signature | Date |
|---|---|

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Y37024

| Individual in Custody's Signature | ID# | Date |
|---|---|---|

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

*E-5-14*

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 03/13/2025 | Date of Review: 04/07/2025 | Grievance #: K4-0325-1225 |
| Individual in Custody Name: Randall, Shawn | | ID#: Y37024 |

**Nature of Grievance:**

Individual in custody submitted a grievance dated 03/02/2025 and grieves Withholding Incoming Mail.

**Facts Reviewed:**

Grievance #K4-0325-1225 was submitted and marked as an emergency. The Warden's office received the grievance on 03/03/2025 and deemed it not an emergency on 03/04/2025. The grievance was answered by the counselor on 03/10/2025. The grievance was then forwarded to the grievance office for processing on 03/13/2025 for 2nd level review.

Grievance Officer reviewed on 04/07/2025 - This Grievance Officer finds the issues were appropriately addressed by the Counselor at the first level.

Additionally, this Grievance Officer contacted Mail Room Supervisor Crain. He stated, "The mail room staff does not retaliate against individuals for writing grievances and they do not hold mail longer than it takes to process."

Per AD 05.06.112- Individual is ineligible to request a transfer at this time due to being classified as maximum security and being in restrictive housing within the last 6 months.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends the Individual in Custody's grievance be DENIED.

| C. Smith CCII | Caly Smith | Digitally signed by Caly Smith Date: 2025.04.07 10:26:28 -05'00' |
|---|---|---|
| Print Grievance Officer's Name | | Grievance Officer's Signature |

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 04/07/2025 | ☒ I concur  ☐ I do not concur | ☐ Remand |

**Action Taken:**

| Kevin Reichert | Digitally signed by Kevin Reichert Date: 2025.04.08 11:23:42 -05'00' | |
|---|---|---|
| | Chief Administrative Officer's Signature | Date |

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Shawn Randall | | |
|---|---|---|
| Individual in Custody's Signature | ID# | Date |

Exhibit #5

1st Lvl rec.  MEN MAR 05 2025

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Individual in Custody's Grievance**

MEN MAR 13 2025

| Date: 03/02/25 | Individual in Custody (please print): Shawn Randall | ID #: Y37024 | Race (optional): BLK |

| Present Facility: Menard | | Facility where grievance issue occurred: Menard |

K4-0325-1225

**Nature of grievance:**

- [ ] Personal Property
- [x] Mail Handling
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] Staff Conduct
- [ ] Dietary
- [ ] HIPAA
- [ ] Restoration of Sentence Credit
- [ ] Other (specify).
- [ ] Disciplinary Report

Date of report _____ Facility where issued _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
    Chief Administrative Officer, only if EMERGENCY grievance
    Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

I have not been getting my mail and I am aware of at least 5 different things that have been sent to me that hasn't been returned or I haven't got a yellow slip. I think this is a retaliation to the grievances I have filed. Can I please get my mail. I know the mail room is withholding mail because I'm waiting for pictures and my police reports from CPD FOIA that was sent back in January.

- [ ] Continued on reverse

**Relief Requested:**

I want all my mail or a transfer to a facility that wont retaliate against me with my mail

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

- [ ] Check if this is NOT an emergency grievance.

Shawn Randall _____ Y37024 _____ 03/02/25
Individual in Custody's Signature _____ ID# _____ Date

(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)  Date Received: 3-6-25  [ ] Send directly to Grievance Officer

[ ] Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:
See attached response.

Strong _____ _____ 3-10-25
Print Counselor's Name _____ Sign Counselor's Name _____ Date

Note to individual in custody: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

**EMERGENCY REVIEW:**  Date Received: MEN MAR 09 2025  IS A - withholding incoming mail

Is this determined to be of an emergency nature:

- [ ] Yes, expedite emergency grievance
- [x] No, an emergency is not substantiated. Individual in custody should submit this grievance according to standard grievance procedure

A.Wills _____ 3-4-25
Chief Administrative Officer's Signature _____ Date

Distribution: Master File; Individual in Custody

Page 1 of 2

DOC 0046 (Rev. 8/2023)



Illinois Department of Corrections

**Follow-up Individual in Custody Counselor Response**

Pilot Program Only

Housing Unit: North 2        Bed #: 4-29        Assigned Grievance Number: K4-0325-1225

| Date: | Individual in Custody Name (please print): | ID #: | Race (optional): |
|---|---|---|---|
| 03/02/2025 | Randall, Shawn | Y37024 | |
| **Current Facility:** | | **Facility where grievance issue occurred:** | |
| Menard Correctional Center | | Menard Correctional Center | |

Response to grievance #K4-0325-1225: Contacted Mail Room- replied "The mail room is current and up to date on the mail that is received from the USPS. All Mail that is received in the mail room is sent into the institution Mon-Fri. Mail watch information is between offender and Internal Affairs. Sometimes mail does get delayed by a day or two, but the mail room processes all mail (incoming and outgoing) in a timely manner. There could be exceptions, such as explicit photos, questionable material, unknown substances, etc. that may have to be investigated further and sent to Intel/IA for further examination."

Strong
Counselor Name (Print)

Counselor Signature

03/10/2025
Date

Distribution: Master File
Individual in Custody

*Printed on Recycled Paper*
Page 1 of 1

DOC 0743p (Eff. Pilot Version Only)

have been slated for _____ in light of this high need and those facilities poor condition. However, cost is partially driven by the size of the prison and Menard is large. At the time of the CGL report, Menard had the highest cost of ongoing capital projects underway at $60 million. However, the report noted such significant investments do not keep pace with need.

The _____ Menard to have one of the comparatively high/positive "top five IDOC prison Building Conditions Index (BCI) scores" putting it in the "impaired operations" ranking. Meanwhile, the rest of IDOC's other maximum-security prisons (Stateville, Logan, and Pontiac) all fell in the bottom three and were ranked "inoperable." In the CGL Operations Assessment, Menard was ranked eighth from the bottom, and was found to "partially meet needs," whereas Stateville, Logan, Pontiac, Dixon and Vandalia scored the lowest and were found not to meet needs.

*(Photo source: _____ )*

The CGL report also frames facility need in light of staffing issues and excess capacity. At the time of that report Menard had a more than 30% reported Correctional Officer (C/O) vacancy rate and a 25% total staff vacancy rate, which has since worsened.

Importantly, CGL projected that IDOC will have nearly 1,000 excess male maximum-security beds in compared to needed bedspace.

The CGL report stresses that many IDOC prisons do not comply with contemporary safety mandates such as the Prison Rape Elimination



Act (PREA) or the ADA, particularly the three oldest male maximum-security prisons of Stateville, Pontiac, and Menard, which have housing units with multi-tiered antiquated design. It states: *The multi-tier housing units still in use at these facilities are reflective of the predominate correctional philosophy that existed during their construction. This philosophy centered on isolation where inmates would spend their evenings in silence in their cell and work during the day. Little, if any space was needed for programming or out-of-cell time.* Further, the

report states of Menard's maximum-security housing units, *"Cellhouses are outdated Auburn Design reflective of correctional philosophy of the 1800's. North and South cell houses were opened in 1887, East and West were opened in 1930's. These units are better maintained than similar at Stateville and Pontiac. <u>Will need replaced, but not as significant a priority as Stateville or Pontiac housing"</u>* (Emphasis added). The report recommended that for Menard IDOC *"Consider replacing existing cell blocks for more modern, functional, and efficient design that has access to program space and staff offices."*

Menard's 2023 PREA audit report also noted *"The facility physical plant is the original structure from the 1800's. Due to the age of the facility there are numerous blind spots."* The auditor found controlled movement and frequency of rounds mitigated these issues. However, JHA received some reports regarding lack of supervision and 30-minute rounds at the time of our May 2024 visit. The 2023 PREA audit report also states *"During the tour the auditor observed cameras in two housing buildings and a few common areas. The auditor verified that the few cameras available assisted with supervision through coverage of specific areas. The video monitoring technology is not monitored via live feed by security staff. The cameras area reviewed and monitored by Executive Leadership staff and Internal Affairs staff. The auditor observed reflective mirrors in a few areas including health services, education, chapel and recreation. ... The auditor highly recommends that cameras be installed throughout the facility, including in housing areas and common areas. Due to the age and physical plant of the facility additional cameras would assist with preventing, detecting and responding to sexual abuse. Additionally, they would assist with supplementing current staffing levels."*

**JHA continues to recommend comprehensive use of cameras throughout IDOC, particularly in light of staffing issues and serious staff conduct concerns reported at Menard.** Individuals in multiple areas during the visit independently reported that staff assault people in areas without cameras, some locations mentioned multiple times included bullpens and in the infirmary.

Menard's [illegible] required corrective action regarding possible cross-gender viewing as in some areas with multi-tier design and open bar cell-front housing that *did not provide adequate privacy for inmates when using the restroom or changing clothes.* JHA has also noted this issue in the past and at other prisons; however, historically using barriers to block sightlines for privacy has not always been permitted under IDOC rules due to other security concerns. In response to the 2023 PREA audit, Menard reportedly issued "modesty sheets," described in Menard's Orientation Manual:

> **Modesty Sheets**
> Each individual in custody shall be provided with a modesty sheet along with their state-issued bedding. The modesty sheet may be used to cover oneself to provide additional privacy while using the in-cell toilet. The modesty sheet shall be laundered on the same schedule as state-issued bedding. Use of the modesty sheet for any purpose other than covering oneself while toileting, including hanging the modesty sheet on the cell-front bars or in any manner to impair surveillance, shall be strictly prohibited and subject to ticket/discipline.

Individuals in custody housed in the MSU benefit from living in more modern X house units, which have dayrooms, unlike the max. At the time of the visit, the MSU dietary kitchen had been reportedly been out of use for two years for repairs, and some staff felt that this was just one example of Menard not getting needed attention and maintenance funding.

During JHA's May 2024 visit, staff and individuals in custody raised various other physical plant or infrastructure concerns. In particular, at the max we received plumbing concerns including a few reports of non-functioning toilets or backed up sewage, and we observed multiple sinks malfunctioning. People also pointed out chipping paint in cells, leaks and mold. Some reported lack of access to cleaning supplies. One person commented on [illegible]                Others reported avoiding drinking the water when possible and that it was discolored and tasted bad which is an issue also commonly reported at Stateville and Pontiac. Concerns about water

safety also occur at other prisons. Several individuals at Menard shared fears that they were being harmed by environmental factors.

Extreme temperatures were acknowledged by staff and administrators. This is especially a concern in multi-tiered housing units. Some individuals reported that in winter the windows are opened and people on upper galleries freeze, while in the summer windows were not opened when people believed this would help with heat, which intensifies on upper galleries. Individuals continue to report that the smaller fans now sold on commissary are not helpful. Some people housed behind solid doors reported particularly poor ventilation, and one individual stressed that this was bad for his asthma and that the lack of air flow gave him anxiety. There were a few reports in various max housing areas regarding mace coming into people's cells, and some thought staff were deliberately macing them indirectly, e.g.,                          or
                                                      Menard had the highest number of use of chemical agents reported in IDOC.

There were also reports of infrastructure issues affecting communications. Some staff reported issues with facility phones going down and individuals reported problems with Wi-Fi and tablet connectivity in the max. As is the case with many of Illinois' prisons, lack of technological infrastructure impairs communication outside the prison and remote program opportunities.

## Lockdowns & Lack of Out of Cell Time

As noted in the Executive Summary, Menard had reported use of lockdowns over almost the entire prior year. **JHA continues to believe more detailed public reporting of all prison lockdowns is necessary to better capture what movement is occurring and where there are issues.** Although the prison was on lockdown, some things like visits were still occurring. Significant use of lockdown has been reported, but the information contained in the public IDOC Operations and Management Reports (OMRs) continued to appear inconsistently reported across prisons and had some obvious inaccuracies.

At Menard, administrators stated they were trying to run yards at the max when they could during lockdowns, alternating the schedule between housing areas. However, **in JHA**

interviews with individuals in custody it appeared that some populations (particularly those with disciplinary restrictions) were not getting any yard, and most were not getting yard as per schedule. We requested additional information and that administrators review this. Some general population individuals reported having only two yards in five months, while someone in PC said they had yard about three times a month, but that the day before the visit was the first yard in two weeks. Others people reported lack of weekend yard. Some people did report that evening yard (which is offered during increased daylight months) was expected to be helpful, however, it was also reportedly cancelled at times. Access to yard or dayroom in RH can also mean more access to phones. Some people specifically mentioned being locked down on Mother's Day, and therefore being unable to contact their families.

In RH we heard universal reporting of not getting time out-of-cell or yard access. Someone for example stated he only got out for healthcare or attorney calls, another person said he got out for telepsych for five minutes once a month. Some reported their only out-of-cell time was for showers, which several people reported they were not offered three times a week per policy. For example, someone in RH stated that showers did not always get offered and that staff will sign that they occurred when they did not. During lockdowns some people in other max general population housing also reported lack of regular shower access.

People reported three to six months without any yard access in various parts of RH housing. Likewise, people in AD reported not having yard at all and talking to mental health briefly through doors or having only telepsych, which is typically monthly at best. Some people who reported receiving little yard access were asked if they also had disciplinary yard restrictions, which some had, while others did not. Yard restrictions can only be used in relation to misconduct on yard and should be an extreme part of progressive discipline and reviewed on an ongoing basis. Some people reported that they did not have misconduct relating to conduct on yard, yet they had a yard restriction. JHA requested more information about the number of people on yard restrictions and lengths of these restrictions. Menard administrators responded that                                    and that in May they had four people on yard restrictions, including two people on 180-day restrictions, one on a 60-day restriction, and one on a 30-day restriction. This was down from what was reported for the month prior, when nine people restricted (four 30-day, one 60-day, and four 180-day). JHA continues to recommend information regarding additional non-RH sanctions be tracked

**and publicly reported to ensure appropriate transparency and review regarding use of discipline and in-cell confinement.**

**JHA also again recommended ongoing review by administrators of provision of out-of-cell time in restrictive housing statuses** and requested to review information regarding dates yards were run for RH galleries prior to our visit. Menard administrators responded

." Complete lack of outdoor activity for at least a month for everyone in restrictive housing is clearly not acceptable, yet occurred. Administrators indicate they cannot operate to meet minimal standards without staffing. Something must change.

Despite Menard being on lockdown during our visit, we did appreciate seeing some people in general population housing out on yards. However, on the morning of the first day of the visit, there was a fight on the High Aggression housing unit yard resulting in more restrictions for some. One individual shared that he felt there should not be collective punishment meaning restrictions based on things going on in other areas or with other people, and others mentioned that they feel they are punished for the behavior of others that they have no control over. Administrators reported that the High Aggression housing unit often had fights and other disciplinary issues, including individuals possessing homemade weapons. This is a real safety concern; however, as on the streets, there is a lot of feeling at Menard that people need weapons for self-defense. **JHA again recommends more use of more screenings and use of technology including cameras to increase feelings of safety.** On the second day of the visit, JHA visited the High Aggression housing unit and spoke to people who shared many of the same concerns heard throughout the max side of the prison. One individual noted that he was relatively close to his release date and reported he had a lower aggression score such that he should not be housed on the unit; when JHA shared this information, administrators agreed to review his housing. Under IDOC policy people should be able to be reclassified at least annually. Despite issues of fights, there was consensus between staff and individuals in custody that most lockdowns resulted from staffing issues and this is reflected in OMRs, as almost all lockdowns were reported to be administrative and not incident based.

With people being fed in cell, some reported cold or not enough food. During the visit, JHA was pleased to see some dietary trays that included fresh fruit and to hear that as of April 2024 IDOC offers a Hallal diet. Only three people reportedly had selected this diet at Menard and some Muslim individuals did not yet seem aware of the option. Administrators also noted they would need a vendor if there were to be significant demand. A couple people stated dietary was improving, however, we heard more negatives. Some people raised dietary issues such as receiving spoiled milk, being served potatoes frequently, that the potatoes were unwashed, that they were sometimes served bugs in oatmeal, "green" meat, or that breakfast was always bread, cereal, and gravy. Someone said that trays were delivered at different times to different housing units, e.g., some at 4:00 and some at 5:30. JHA notes that predictability and perceived equal treatment are particularly valued in a carceral environment.

As mentioned above, access to the yard is one of the few regular out-of-cell opportunities for people in max housing which lacks dayrooms. During the visit, people expressed disappointment that the max gym had not reopened since COVID. JHA appreciates that administrators reported that they were using gym space to conduct tournaments, such as basketball, pickle-ball, and chess. However, we wondered about criteria for participation limiting gym use when more out-of-cell time and exercise was needed across the population. We asked Menard administrators to consider what specific resources, including possible enhanced use of technology, would be needed to ensure safe access to more recreation and out-of-cell time. Administrators responded.

People in PC reported lack of access to chapel and religious services. Additionally, several people reported lack of barber services, which administrators confirmed was not occurring due to lack of security staff. JHA recommends figuring out alternative ways to deliver this service if movement cannot be run to the barber area.



## Drugs

JHA has been encouraging IDOC to make more data around contraband and drug use within prisons, overdose, hospitalization and related issues publicly available, as discussed in our 2023 Western report. As of May 2024, IDOC reported 309 drug discoveries in prisons year-to-date. The highest number of reported drug discoveries at a prison, 51 (17%), was at Menard, which it should be noted is one of the largest and highest security IDOC facilities. Similarly, Menard had the highest reported drug discoveries for the prior two years (in 2023, 236 (33%) of 715 discoveries in IDOC; and in 2022, 155 (41%) of 379). The vast majority of the 309 IDOC-wide reported drug discoveries in 2024 as of May, 88% (272), were synthetic cannabinoids, seven percent (23) were fentanyl, two percent (5) were marijuana, and three percent (9) were identified as other drugs. Likewise in 2023 most were synthetic cannabinoids (657, 92%). Most drugs in 2024 were discovered in cells (53%), there were 73 (24%) reported discoveries in mail and 64 (21%) on a person. Of reported drugs found in mail, 10 were identified as being found in legal mail and 58 in regular mail. In 2023, 43% were discovered in cells, 37% in mail and 18% on person; discoveries in mail were reported to be 49 in legal and 203 in regular.

Narcan had reportedly been used 85 times in IDOC in 2024 as of May. About three-fourths (63) of these uses were identified for suspected overdoses and the individual was taken to an outside emergency room. The other instances were not identified as an overdose and were treated at the prison.

In 2018 JHA Menard surveys only 18% of respondents agreed that *"Contraband from outside the facility often gets inside,"* in more recent MQPL surveys, 42% of respondents at Menard agreed with the statement *"Drugs cause a lot of problems between incarcerated people,"* compared to 33.1% in IDOC total. **During the 2024 Menard visit, someone in custody shared that people were doing drugs because there was nothing else to do. JHA observed that smoke on one of the RH housing units was at times intense and has concerns regarding people's exposure to secondhand smoke.**

At the time of the visit, we were told that there were seven individuals at Menard participating in a voluntary eight-week drug program using a Hazelton curriculum with classes two days a week, with 22 people on the waitlist. Menard administrators provided the following information:

People are reportedly referred to this program by clinical, intel, and adjustment committee staff. Reportedly 51 people had previously been in the drug program and 47 had successfully completed. Eligible people can earn program sentence credit. These individuals reportedly had their incoming mail scanned. It was unclear how many people total had such mail restrictions at the time of the visit, and Menard administrators responded that

Again, JHA recommends that use of restrictions, such as mail scanning, be publicly reported as well as related policy made public.

Some staff shared that they felt like this limited mail scanning pilot was insufficient and that just using a color copier for mail would solve a lot of the drug problems at the facility. Someone noted that they believed the street value of drugs found at Menard was $3 million. Staff report that some of what was coming in on paper was literally                JHA is unclear on how this is formally detected or tested for, but these or other unknown substances can be harmful.

Some people in custody and their supports continue to report to JHA that they believe staff is the main source of contraband in the prison, while some staff and administrators insist mail and visits are the major sources of introduction. Complicating matters, testing for some of these drugs is unreliable, further dependably tracking chain of possession when drugs are found can be difficult, particularly without adequate monitoring. All possible methods of drug introduction should be looked into, documented, and monitored while increased treatment opportunity and incentives to desist are offered. It seems unlikely that Menard can punish its way out of the problem as there is not really anywhere else that is more punitive for some incarcerated people to go for misconduct and many people there feel they lack anything to lose.



## Outside Communication & Information Access

JHA received several concerns regarding people not getting mail and delays during the visit, which is also a topic people have contacted us about. Some people said letters took a month to be delivered and pictures could take longer. A few people reported writing to JHA and we had no record of receiving their letters. Some people reported money vouchers were not made available or were not being processed in a timely manner. This may impede things like sending oversized legal mail or sending family support. Having some outside correspondence was reported to really help some people get through being housed under long-term restrictions.

Although rolling locked boxes are supposed to be circulated daily for mail and grievance receipt in RH and during lockdowns, we heard again (as on our 2021 visit) that this was not reliably occurring. **We reiterate that this is something that should be spot-checked and documented by supervisors, and this is an area where additional cameras could help.**

The frequency of distribution for the yellow/canary envelopes used to send mail for free, which is now part of what the state is supposed to regularly provide to people in custody, was variously reported, from some workers saying they got two envelopes weekly, to some in PC saying they were received monthly, to some in RH saying they had never received the envelopes. Writeouts (pre-stamped envelopes to send mail) purchased from commissary at the time of the visit cost 74 cents. A Menard administrator during the visit said they thought the free mail envelopes were distributed quarterly to everyone and reported that 3,622 envelopes had been delivered by gallery C/Os in March prior to the May visit. In response to JHA's questions regarding this, Menard administrators responded that there is an Agency policy and that "

Administrators also noted that these items. Other administrators suggested people are supposed to be receiving three canary envelopes monthly per core hygiene policy. **JHA advised that with the increase in postage rates, in addition to other price increases, having this be predictable would be helpful.**

dismissed in October 2023 and expert monitoring per the 2016 settlement has ceased, this was being appealed.

Information provided to JHA at the time of the Menard visit showed that less than half of the 68 state healthcare positions at Menard were filled, which included one state social worker providing mental health services. About half of the 28 contractor Wexford medical positions and just 12 of 28 Wexford mental health positions at Menard were filled, with some additional temporary Wexford waiver coverage reported. There were just two of twelve qualified Mental Health Professionals, one of three psychiatrists, six of nine Behavioral Health Technicians, and no Mental Health Services Director, for more than 1,150 mental health patients. During the visit, the prison reportedly had just gotten a Wexford physician on a six-month contract, this was the only onsite doctor for 1,900 people. Positively, in final draft review administrators reported this doctor planned to stay on in a permanent position at the prison.

Menard lacked a dentist, although it was authorized for three through Wexford. Lack of dental care was reportedly resulting in R&C healthcare screening delays. One individual reported it had taken him two years to get new eyeglasses, however, JHA was pleased to see an eye doctor onsite who reported at the time it was taking about a month to get glasses that were made at Dixon. Menard had only 29 of 59 allocated state correctional nurses and licensed practical nurses.

Healthcare staff reported that the number of positions had been increased due to litigation and that there had been some recent improvements that appeared to be helping streamline hiring and background checks. An individual in custody recommended that the Governor get involved to try to improve healthcare provision, such as by making healthcare provider students' tuition free if they work in the prisons. JHA supports this suggestion and notes that there are _____ that may assist with this at

Many people reported to JHA not being seen for sick call, as well as delays in care and medication _____ shows 189 sick calls at Menard in May 2024 compared to 483 at Pontiac, which had a third of Menard's population and 317 at Menard in May 2023. However these numbers appear to vary significantly over time and by prison. As with grievances, people said they put in multiple sick call requests due to lack of response. Concerningly, some



individuals reported being told to put in for sick call for seemingly emergent things, e g , heart issues. We were encouraged to hear that some security staff did advocate for people to receive healthcare, but often this was after repeated sick call requests when issues became apparent or emergent. A few people reported not receiving medical attention after fights, staff use of force, transfers, or other incidents where medical checks should be standard practice. Someone reported not being tested after a cellmate was diagnosed with a contagious disease at an outside hospital.

Some people reported generally they see healthcare staff on units when medications are passed out daily, but a few people also reported periodic disruptions to medication delivery or necessary diabetic testing  For example, someone said typically his blood sugar is tested twice a day but this had been missed the prior day. Others reported lack of monitoring for blood sugar and pressure levels. Several people reported lack of medication refills and gaps of time when they did not receive medications, including ones that needed to be regularly administered such as for high blood pressure and serious mental health issues. Many people reported multiple healthcare issues. Staff also commented on the increase in co-morbidities.

A few incarcerated people also specifically mentioned that there is poor communication from healthcare regarding their medical issues or that they could not get their medical records. Filing grievances did not resolve medical issues according to many reports. In final draft review, administrators reported that since the JHA visit, a regional grievance administrator – which is a new position within IDOC implemented in the past year – has been assigned at Menard and is helping with medical grievance review.

Some staff's impression was that without Wexford collegiate review everyone gets sent out on medical writs for healthcare issues and that this is taking significant facility resources, increasing other restrictions and short-staffing at the prison. Public data shows an increase in use of medical furloughs in IDOC over the past years. In January 2019 there were 1,345 total in IDOC and 107 at Menard, in May 2024 there were 2,961 in IDOC and 193 at Menard – despite the fact that total IDOC population is down more than 25% (from nearly 40k to 29k). Multiple factors including lack of onsite providers, an increasingly elderly and infirmed population, and changes based on litigation may be affecting this and should be reviewed to ensure the most appropriate care is being provided to support health and well-being.

During th  visit, JHA spoke to one individual who had just received a disciplinary transfer t  Menard and who was receiving dialysis necessitating frequent outside transport  as Menard is not one of the few IDOC prisons that provides this treatmen  nsite. With Stateville max s pending closure it was unclear where maximum security dialysis patients will be housed.

Some individuals in custody, at Menard  as at other IDOC prisons  shared that they had medical holds that were impeding transfers and they did not understand this. This included some people who likely should be reclassified as lower-security. The reasoning for not transferring people with pending outside appointments seems to be for                     because under current practice if someone were sent to a new IDOC prison they would have to be reevaluated by the healthcare staff there  However, people in this situation perceive that they are in fact not receiving any care at the prison due to lack of staff. It was unclear why someone could not keep an appointment with an outside provider if transferred, as all such appointments require transport already and a different prison may be closer to, or just as far from, the provider Hopefully implementation of electronic medical records will help facilitate continuity of care such that people can transfer when otherwise appropriate. IDOC awarded  in
in May 2024

Additionally with medical holds some people at Menard reported that if they wanted to transfer they were being asked to sign a form that included waiving their right to sue for inadequate medical treatment  We have received the same concern from people at other IDOC prisons JHA requested a copy of the form to review as what was described does not sound legally valid and raises significant concern about people's legal rights being respected  IDOC administrators responded to this request

This form was not provided but is in standard use throughout IDOC

People at Menard reported health issues that they directly attributed to time-in-cell  such as weight gain  atrophy, and mental health issues  Someone in AD housing reported that he was

having trouble sleeping and being in the cell all the time and was seeking mental health help in the hopes of not becoming SMI.

JHA raised some of the more emergent individual medical and medication issues shared with us with each person's permission with administrators, and we were told some were being addressed. However, the commonality of such issues was striking and our attempted interventions inadequate.

Healthcare staff noted that their infirmary area which can house 26 people is often considered at capacity at lower numbers due to the fact that many people at Menard cannot mix with others due to their housing or disciplinary status. The *CQL report* also found that Menard's medical unit was *"undersized"* and that use of paper records was an issue. Some people housed in the healthcare unit too reported complete lack of out-of-cell time, limited mental health cell-front contact, and lack of access to property over significant periods of time.

Someone raised that even those in general population at Menard max are still restrained, e.g., cuffed to a stool during healthcare and mental health visits, whereas this is not standard practice elsewhere in IDOC for those not under disciplinary or other individualized restrictions. Menard administrators responded that

The referenced policy is not one that is publicly available and JHA is unsure when it was last revised; however, a 2010 version of the policy that we were able to review states that the Warden shall ensure a written policy is established and within prisons restraints may be used when moving people in disciplinary segregation and *"Whenever the Chief Administrative Officer deems it is necessary in order to ensure security within the facility"* other than in the case of pregnant people.

As with other healthcare issues, some people reported not having needed ADA accommodations, such as hearing assistive devices, grab bars, etc. People reported having falls, including on stairs, and issues getting low bunk and gallery permits. One individual with limited mobility demonstrated how without grab bars he had fallen and gotten wedged between his toilet and the wall in a cell until staff came to assist him. Another person expressed concern that if he refused a top bunk despite being older and having multiple health issues, just like his cellmate, he would be sent to RH. Another person with a disability issue that required a simple accommodation did not want us to raise it because of fear of losing his job. Menard's _____ noted about a tenth of the population had some sort of need that might require accommodation (in that report 45 people at Menard were identified as having a physical disability, one as having a cognitive or functional disability, three people as blind or having low vision, and 142 as deaf or hard of hearing.) This is likely an undercount as disabilities are more prevalent in institutionalized and older populations and IDOC has not historically captured this information, now required in PREA screenings.

JHA was disappointed again to hear that few _____ have been granted to individuals at Menard, reportedly just two, one during COVID and one the week prior to the visit. However we understand that staff at the facility have submitted more people and were told that this included all of the terminally ill individuals housed in the infirmary at the time of the visit. As of August 2024, Menard administrators reported _____ _____ During the visit staff and administrators noted that if these people are released, they need somewhere to go and receive care. There were _____ total under the Joe Coleman medical release law in 2023 throughout IDOC. The number of applications reviewed by the Prisoner Review Board (PRB) in 2023 was not publicly reported and the latest PRB annual report available as of August 2024 was from _____ That report showed 36% of "qualified" applications in 2022 were granted, with more than twice as many applications found "unqualified" than were reviewed. _____ 18 months after the law was implemented likewise stated two thirds of applications had been denied.

During the Menard visit, JHA spoke with one elderly individual serving life, who had already served more than 40 years, who had just received a cancer diagnosis. Another elderly lifer who had served more than 30 years shared that he had a serious heart surgery. Some people serving life or long sentences had been incarcerated since they were children. The majority

(63%) of MQPL survey respondents at Menard reported they were first incarcerated prior to the age of 25, compared to 56.1% of respondents in IDOC total, which is considered to be emerging adulthood where people's brains are still developing.

Again, JHA was encouraged to hear how some staff and administrators were eager to advocate for some individuals, such as lifers with                        and that they were asking us how people can get out of prison. Unfortunately, absent resentencing or retroactive application of changes to laws (which have proven difficult to pass), the only pathway is through medical release, where someone has to be seriously impaired, or clemency. **We recommend IDOC partner with community organizations to educate staff and the population more on possible pathways out of prison and empower them to join us in advocating for reconsideration of excessive use of incarceration.** An administrator shared that they had one individual who had been incarcerated 40 years who was released and then died of an overdose. This sad example shows how important reentry preparation, treatment availability, and support is for everyone.

## Mental Health

As noted above, about 60% of Menard's total population was on the mental health caseload and about a fifth (19%) were designated SMI. Mental health staffing is detailed in the above Medical section. Individuals with higher mental health need were more likely to be housed in the max, thus accounting for even higher percentages of that population.

## V.                    Legal Claims

22) Plaintiff reallege and incorporate by reference paragraphs 1-21.


23) upon information and belief The unprofessional act's of IA officer's Sergent Ms. Woodley and Lieutant Dallas. LED to A Plethora of Plaintiff constitutional Rights being denied and or violated. leading to additional Act of retaliations. HAd Sergent Ms. Woodley And or Lieutant Mr Dallas included their finding's of A Phonebook holding what where believed to have been 4 paper sized ID card's Believed to be Synthetic Cannabinoids inside plaintiff cell, person or that He was being Placed under investagtion. Plaintiff could've had time to pre-pair A Defense Which is A violation of Plaintiff's Due-process. Rights.

Plaintiff ▮▮▮ Then was written up by Internal Affaie's/IA officer Robert W. Gearhart for A 203 Drug and Drug Paraphernalia charge Which is clearly Retaliation against the Plaintiff for being found Not- Guilty of 203 ~~Drug~~ and Drug Paraphernalia.

IN Which were Plaintiff was found Guilty And Given 6 month's Restrictive Housing. Plaintiff was ~~found~~ forced to endure other hardships That Led ~~to~~ him needing (But being Denied) Medical Attention; Mental Health Attention. Which He is still (seeking help.)

These Act's by prison officials, command staff, correctional officer's and Medical Staff all prove And Support the Act's of malice, Deliberate indifferent, Crue And unusual punishment, Due process violation ▬ 1st Amendment, 14 Amendment And 8 Amendent All under the ~~~~ United States constition.


24.) upon information and believe Plaintiff was found Guilty of the

Charge of 203; Drug and drug paraphernalia which was based upon An un-reliable field test (serchie Nark II) Test Kit that has been previously proven to be unreliable as it findings are inot inadequate and do not produce just result's and false postives are being reported for synthetic Cannabinoids.

25.) upon information and belief Plaintiff contends and maintains that These "Bad Act's" by defendants are indeed intentional and a "domino effect" has ensued as prison Staff have Piled one deprivation after another upon plaintiff, Thus, leading to the due process, Cruel and unusual punishment, Deliberate indifference, Retaliation and denial of medical care to all ensue.

26.) The Plaintiff has not only Suffered Physical injuries. Due To Not being Allowed out the cell to Yard to maintain A healthly Body. But likewise Suffers from Mental and emotional injury As Well.

27.) upon information and belief The Action's of the warden down to The guards including but not limited too Health Care, Mental Health And the "All The Restrictive housing Staff Violates the Eight Amendment When it is not Applied "in good faith" or in An effort to maintain or Restore discipline; But instead is Used to "Maliciously And Sadisti- cally cause harm; The "unnecessary and wanton infliction of pain is not Part of prison discipline, And Menard Staff are consis- tently harming prisoners Physically, Mentally, And emotionally in Dis- ciplinary proceedings, False report's, And the wanton infliction of

Such injuries are in clear violation of Plaintiff's civil rights under the eighth and fourth Amendment.

28). Upon information and belief Plaintiff has placed Multiple sick calls Request Slip's and Talked with mental Health ▬▬ Pleading with them for help since 10-1-24. But has yet to be seen by Mental Health STATT to remedy his current matters. And is Now At Risk of Additional injury if not Attended to,
Which is the blatant Denial of Serious medical need. Thus supporting Deliberate indifference.

29) Upon information and belieff Had the Warden, ▬▬▬ Answered Just 1 of the Request Slip's I wrote Him. He could've stopped The "Restrictive House Staff" from Not Allowing Me out my cell for YARD and Any other out the Cell-time. His failure to insure the Safety of "All" prisoner's IS criminal or At the least A violation of Plaintiff 8th Amendment.

30.) The Plaintiff has no Plain, Adequate or complete remedy At law to redress the wrongs Described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendant's unless this court grants the declatory and injunctive Relief Which Plaintiff seek's

VI. Prayer for Relief.

Wherefore, Plaintiff respectfully prays that this court enter Judgement granting Plaintiff:

31.) A Declaration that the Act's and omissions described herein violated Plaintiff's Right's under the constitution and law's of The united states.

32.) A Preliminary and permanent injunction ordering defendant Anthony Wills (And All of his Subordinates) to stop harassing Plaintiff, Restore all Rights. Privileges and Grade; to Stop issuing false disciplinary reports and findings from the Sirchie Sirchie Narks II test Kit. And to stop utilizing Act's of excessive force for arbitrary purposes

33.) Compensatory Damages in the Amount of $100,000.00 Against each defendant, Jointly and Severally.

34.) Punitive Damages in the Amount of $25,000.00 Against each Defendant.

35.) A Jury Trial on all issues triable by Jury.

36.) Plaintiff's cost in this suit

37.) Any Additional relief this court Deems Just Proper and EQuiTABLE.

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

## VI.    JURY DEMAND (*check one box below*)

The plaintiff ☑ does  ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on:    08/19/25
    (date)

    Menard C.C
711 KasKashia
    Street Address

Menard, IL 62259
    City, State, Zip

*Shawn Randall*
    Signature of Plaintiff

Shawn Randall
    Printed Name

Y37024
    Prisoner Register Number

_____
    Signature of Attorney (if any)

Rev. 10/3/19

**United States District Court**
**SOUTHERN DISTRICT OF ILLINOIS**

Shawn Randall (Y37024)
            Plaintiff,                                )
                                                      )
                                                      )
VS.                                                   )        Case No.: 25-cv-1130-RJD
                                                      )
C/O R. Gearhart, Lt. Dilles, Etc...                   )
            Defendant                                 )

## NOTICE OF FILING

TO: Staci Yandle                    TO: _____
750 Missouri Ave, East 3id floor        _____
St Louis, IL 62201                      _____
_____                         _____

TO: _____                 TO: _____
_____                         _____
_____                         _____
_____                         _____

PLEASE TAKE NOTICE that on August 19, 2025, I have provided service to the person(s) listed above by the following means:

☒    Electronically filed through Menard Correctional Law Library

☐    Institutional mail at _____ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service.

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 USC 1746 and 18 USC 1621, I declare under penalty of perjury that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

Date: 08/19/25

/s/ Shawn Randall
NAME: Shawn Randall
IDOC#: Y37024
Menard Correctional Center
P.O. Box 1000
Menard, IL 62259