IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN RANDALL,<br><br>    **Plaintiff,**<br><br>v.<br><br>C/O ROBERT GEARHART, LT. DALLAS, SGT. WOODLEY, JACOB GUETERSLOH, KEVIN REICHERT, SANDY WALKER, ANTHONY WILLS, ANTHONY B. JONES, ANGELA LOCKE, C/O CHANDLER, C/O HEINS, C/O BAKER, C/O CHOATE, C/O FARRAR, C/O BENT, MS. SALGER, MS. PHILLIPS, C/O FALASTER, C/O MCCLANAHAN,<br><br>    **Defendants.** | Case No. 25-cv-1130-RJD |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Shawn Randall, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Randall's original complaint alleging First, Eighth, and Fourteenth Amendment claims against officials at Menard was dismissed without prejudice for failure to state a claim (Docs. 1, 12). He was granted leave to file an amended pleading. In his Amended Complaint (Doc. 13), Randall again alleges that his First, Eighth, and Fourteenth Amendment rights were violated during disciplinary proceedings at Menard.

1

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Amended Complaint**

On August 15, 2024, internal affairs officers Lieutenant ("Lt.") Dallas and Sergeant ("Sgt.") Woodley conducted a shakedown of Randall's cell resulting in Randall and his cellmate both being placed in restrictive housing (Doc. 13, p. 12). Both inmates were issued a disciplinary ticket for drugs and drug paraphernalia (*Id.*). On August 16, 2024, Randall received the ticket but contends that there was no mention of any paper found in his cell (*Id.*). He alleges that Dallas and Woodley failed to include in the ticket that they found a phonebook containing ID cards believed to have synthetic cannabinoids on them (*Id.* at p. 69). As a result of the ticket failing to include this information, Randall contends that he was unable to prepare a defense (*Id.*). On August 20, 2024, he went before adjustment committee members Sandy L. Walker and Anthony B. Jones for a disciplinary hearing (*Id.* at p. 12). Randall pled not guilty. The following day he was released from

---

[1] The Court has jurisdiction to screen the Amended Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and the medical providers, to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these entities.

restrictive housing because the adjustment committee found Randall not guilty of the charges due to his cellmate pleading guilty to the charges (*Id.*).

On September 24, 2024, Randall received another disciplinary report for drugs and drug paraphernalia from internal affairs officer Robert W. Gearhart (Doc. 13, p. 12). Randall was placed back in restrictive housing. Randall alleges that the ticket was for the same infraction he was previously found not guilty on (*Id.* at p. 13). The following day, Randall wrote several request slips to Sandy Walker, Anthony Jones, Anthony Wills, Kevin Reichert, Woodley, and Dallas informing them that he had already received a disciplinary ticket for this infraction and previously found not guilty (*Id.*). Randall believes this second ticket constituted double jeopardy (*Id.*).

On October 1, 2024, Randall again went before adjustment committee members Sandy Walker and Anthony Jones for a disciplinary hearing (Doc. 13, p. 13). He informed the officials that he sent them request slips about the prior disciplinary ticket (*Id.*). He also noted that the original shakedown slip failed to note that a phonebook and drugs were found during the search (*Id.*). He pled not guilty to the disciplinary ticket. On October 1, 2024, he wrote a grievance regarding the disciplinary ticket, indicating his belief that the ticket amounted to double jeopardy (*Id.* at p. 14). On October 2, 2024, Randall learned from his gallery officer that he was found guilty of the charge and received six months in segregation (*Id.*).

On October 18, 2024, Randall wrote a request slip to Anthony Wills and Mr. McClanahan requesting yard/recreation time. He also submitted a request slip to Ms. Salger and Ms. Phillips requesting a one-on-one mental health appointment due to his

inability to leave his cell (Doc. 13, p. 14). Randall alleges that he was having trouble with his mental health due to his inability to leave the cell for yard or recreation (*Id.*). On November 19, 2024, he again wrote a grievance about the second disciplinary ticket (*Id.*). He noted that he believed the lab report indicated the substance found was not synthetic cannabinoids and he should be let out of segregation (*Id.*).

On December 18, 2024, he again wrote to Anthony Wills and Mr. McClanahan requesting out of cell time on the yard, informing them that he had not been let out of his cell since October 18, 2024 (Doc. 13, p. 15). He submitted another request to Ms. Salger and Ms. Phillips for a one-on-one or group meeting for his mental health (*Id.*). He indicated that he did not feel comfortable discussing his mental health when mental health staff made rounds through the unit because they were accompanied by guards (*Id.*).

On January 8, 2025, Anthony Wills signed off on placing Randall on mail watch. The following day, Angela Lock signed and confirmed the order placing Randall on mail scan (Doc. 13, p. 15). Upon learning of his placement on mail watch and mail scan, Randall wrote Anthony Wills, Sandy Walker, and Anthony B. Jones explaining that he should not be on mail watch because he was not guilty of the disciplinary ticket (*Id.*). He again noted that his cellmate pled guilty to the charge (*Id.*). He never heard back from the officials. On January 20, 2025, he submitted a grievance about his mail.

On February 25, 2025, he wrote another grievance about numerous issues including staff conduct, medical treatment, and his access to the yard (Doc. 13, p. 16). Randall noted in the grievance that he asked every correctional officer on his gallery daily

4

to access the yard and each time the officers responded that it was not up to them whether yard was allowed on a certain day. Randall identifies Officer Heins, Choate, Farrar, Baker, Bent, and Chandler as correctional officers he routinely spoke to about his ability to access the yard on a certain day (*Id.*). He also informed the grievance officer that he asked Ms. Salger and Ms. Phillips during their daily rounds for access to mental health services and yard (*Id.* at pp. 16, 71). On March 2, 2025, he submitted another request slip directed to Ms. Salger and Ms. Phillips requesting mental health services (*Id.*).

## **Preliminary Dismissals**

In addition to claiming that his due process rights were violated by the issuance of a second disciplinary ticket, Randall alleges that Robert W. Gearhart issued the second disciplinary ticket in retaliation for Randall being found not guilty on the first ticket. In order to state a viable retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). But Randall fails to point to any protected activity that he was participating in that led to the disciplinary ticket. He merely alleges that Gearhart was upset at Randall being found not guilty on the original charge. Because he fails to point to any protected activity, any retaliation claim is **DISMISSED without prejudice**.

Further, to the extent Randall takes issue with the change in how he received mail as a result of the disciplinary ticket, Randall also fails to state a claim. Restrictions on an inmate's mail are protected by the First Amendment. *Rowe v. Shake*, 196 F.3d 778, 782 (7th

5

Cir. 1999) (citations omitted). However, "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974). For incoming mail, a court will uphold regulations or actions restricting inmate mail if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Here, Randall acknowledges that he was placed on mail scan because he was found guilty of the drug charge regarding synthetic cannabinoids on small pieces of paper. Although Randall disputes whether he was guilty of that charge, the prison clearly has a penological interest in preventing drugs from entering the prison. Further, there are no allegations suggesting that Randall is prohibited from accessing his mail, he has just been placed on "mail scan status," a process that Randall fails to explain in his pleading. Thus, Randall's claim against Anthony Wills and Angela Locke regarding his placement on mail scan is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

> **Count 1:** **Fourteenth Amendment due process claim against Lt. Dallas, Sgt. Woodley, Robert Gearhart, Sandy Walker, Anthony Jones, Anthony Wills, and Kevin Reichert for finding him guilty on a disciplinary ticket for which he had previously been found innocent.**
>
> **Count 2:** **Eighth Amendment conditions of confinement claim against Anthony Wills, McClanahan, Officer Heins, Choate, Farrar, Baker, Bent, and Chandler for denying Randall access to the yard while in segregation.**

> **Count 3:** Eighth Amendment deliberate indifference to mental health needs claim against Salger and Phillips for failing to provide him with mental health care while in segregation.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

At issue in this case are two disciplinary tickets issued by officials related to the drugs allegedly found in Randall's cell on August 15, 2024. Randall alleges that the first ticket, issued by Lt. Dallas and Sgt. Woodley, failed to include information about the supposed items and drugs found in his cell. Randall contends that the failure to include the information in the ticket left him unable to prepare a proper defense. But an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Randall acknowledges that he was found not guilty on the first ticket and did not serve any time in segregation. There are simply no allegations suggesting that he suffered an atypical and significant hardship that entitled him to due process protections.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Randall was found guilty on the second disciplinary ticket and served six months in segregation. His extensive stay in segregation could implicate a protected liberty interest. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015). As to this second ticket, Randall mostly focuses his claim on the fact that he was charged a second time for the same infraction. He repeatedly states that he was subject to double jeopardy as a result of the second ticket (Doc. 13, p. 13). But double jeopardy principles do not apply in the disciplinary context. *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996) ("an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge"). Thus, he cannot maintain a due process claim merely on the fact he was allegedly charged a second time for the infraction after being found not guilty on the first ticket. To the extent that Randall alleges that he informed Sandy Walker, Anthony Jones, Anthony Wills, Kevin Reichert, Woodley, and Dallas about the double jeopardy issue, he fails to state a claim.

Randall also disputes that he had proper notice of the charges in this second ticket, arguing that his initial shakedown slip failed to include the phone book and drugs, nor did it note that items were sent to a lab (Doc. 13, pp. 13, 69). In situations where an inmate complains about discipline in which he received segregation but not the loss of good-time credit, the disciplinary proceedings are subject to an informal due process inquiry. Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in a written statement of hearing. *Ealy Watson*, 109 F.4th 958, 965-66 (7th Cir. 2024). Here, Randall acknowledges that he received notice of the disciplinary ticket. His attached grievance

8

responses indicate that the disciplinary ticket noted the ID sized pieces of paper found in an address book on the bottom bunk, the bunk that Randall was known to have resided in at the time (Doc. 13, p. 41). The pieces of paper field tested for synthetic cannabinoids and were sent out for further testing (*Id.*). Thus, Randall's exhibits demonstrate that he received notice of the charges. He also acknowledges that he wrote to numerous individuals before the hearing about the charges and presented his arguments at the disciplinary hearing. He alleges that he informed Sandy Walker and Anthony Jones that the ticket lacked information regarding the phone book and drugs, or that the items were sent to a lab (Doc. 13, p. 13). Thus, Randall received his entitled process and his due process claim is **DISMISSED without prejudice**.

**Counts 2**

As to Randall's claims in Count 2, he alleges that he was never let out of his cell for yard during the entire time he was in segregation. In order to state a claim for unconstitutional conditions of confinement, a plaintiff must demonstrate that (1) he suffered a sufficiently serious deprivation, and (2) the defendants acted with deliberate indifference to his conditions of confinement. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Randall alleges that he wrote several request slips to Wills and McClanahan informing them that he was not being let out of his cell for any reason. He attaches several of those request slips to his Amended Complaint. The slips indicate that he needs exercise due to his medical issues, but correctional officers informed him that other officials were cancelling yard access for the unit (Doc. 13, pp. 24-27). Randall alleges that Wills and McClanahan ignored his requests for yard. At this stage, Randall adequately alleges a

9

deliberate indifference claim against Wills and McClanahan for his lack of access to the yard.

But Randall fails to state a claim against Officers Heins, Choate, Farrar, Baker, Bent, and Chandler. He merely alleges that he spoke to them "every day" asking them about his access to the yard. But he fails to indicate the date he spoke with each, individual officer, the details of those conversations, or each officer's specific response. Although Randall contends that each officer "made it out to be a joke", he fails to indicate any officer's specific response other than that it was not their decision. Further, there is no indication that any of the officers were aware of Randall's specific need for the yard given his alleged medical conditions. Thus, Randall fails to state a claim against any of the correctional officers listed in his Amended Complaint.

**Count 3**

To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). Here, Randall alleges that he submitted requests to Salger and Phillips, as well as spoke to them, asking for mental health care but they ignored his requests. At this early stage, Randall states a claim against Salger and Phillips.

## Disposition

For the reasons stated above, Count 1 is **DISMISSED without prejudice**. Count 2 shall proceed against Anthony Wills and McClanahan but is **DISMISSED without**

**prejudice** as to Officers Heins, Choate, Farrar, Baker, Bent, and Chandler. Count 3 shall proceed against Salger and Phillips. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Anthony Wills, McClanahan, Salger, and Phillips: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Randall. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Randall, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Randall's claims involve his mental healthcare, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Randall, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Randall is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 14, 2026**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order

12

containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**